## Samuel v. Blackwell, Appellant.

*Trespass—False imprisonment—Disturbing of public meeting—*
*Act of March 31, 1860, P. L. 392—Act of May 2, 1901, P. L. 132—*
*Charge to jury.*

The fact that a plaintiff had been arrested on a charge of disorderly conduct under the provisions of the Act of May 2, 1901, P. L. 132, and had been erroneously fined by a magistrate, which judgment was afterwards reversed on appeal, will not of itself make the arrest unlawful. If the evidence produced by the defendant was sufficient to warrant a finding that the plaintiff, at the time of his arrest, was actually engaged in wilfully and maliciously disturbing a public meeting, the jury should have been instructed that the defendant had reasonable grounds for asking the officers to make the arrest.

False imprisonment consists in the confinement or detention of the person without sufficient authority; which authority may arise either from some process from the courts of justice, or from some warrant from a legal officer having power to commit; or from other special cause warranted, in the circumstances, either by common law or statute.

The burden is upon the defendant when the party arrested seeks to recover damages, to prove that the imprisonment was by authority of law. The question of the probable cause for the arrest is one of law and upon this point there is no difference upon principle between an action for false imprisonment and one for malicious prosecution. Where the facts are in controversy the case must be submitted to the jury, in which event it is the duty of the court to instruct what facts will constitute probable cause, and to submit to them only the consideration of such facts.

Argued October 15, 1920. Appeal, No. 80, Oct. T., 1920, by defendant, from judgment of Municipal Court of Philadelphia, June T., 1919, No. 525, on verdict for the plaintiff in the case of Pickney P. Samuel v. Charles Blackwell. Before PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Reversed.

540, (1921).] Statement of Facts—Opinion of the Court.

Trespass for false imprisonment.    Before KNOWLES, J.

The facts appear in the opinion of the Superior Court.

Verdict for plaintiff for $1,000 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence, the charge of the court, and refusal of defendant's motion non obstante veredicto.

*William T. Connor,* and with him *John R. K. Scott,* for the appellant.—It was not necessary for the defendant to prove that the plaintiff was guilty of disorderly conduct.   The issue was whether there was any reasonable or probable cause for the arrest of the plaintiff.   The disturbance of a public meeting, lawfully assembled, justified the ordering of the arrest: Com. v. Dupuy, 4 Clark 1;   Com. v. Campbell, 50 Pa. 266.   Judgment should have been entered for the defendant: Boyd v. Kerr, 215 Pa. 259.

*Abraham Wernick,* and with him *I. G. Gordon Forster* and *Rowland C. Evans,* of *Evans, Forster & Wernick,* for appellees.—The plaintiff was arrested without a warrant under a charge of which he was not guilty and is entitled to substantial damages: Foley v. P. R. T., 240 Pa. 169; Torak v. Phila. Reading Ry. Co., 60 Pa. Superior Ct. 248; McAleer v. Good, 216 Pa. 473; Lentz v. Baum, 22 Pa. Dist. Repts. 576; Tufshinsky v. Railroad, 61 Pa. Superior Ct. 122; McCarthy v. DeArmitt, 99 Pa. 63.

OPINION BY PORTER, J., March 5, 1921:

This is an action in trespass, for false imprisonment, in which the plaintiff recovered a judgment in the court below and the defendant appeals.   The defendant was the pastor in charge of the Central Baptist church, a congregation of colored people, and was presiding at a meet-

ing of the congregation at which the report of the trustees of the church was being considered. The plaintiff, who testified that he had been assistant pastor, made a violent verbal attack upon the defendant, who was presiding at the meeting, accusing the latter of grossly immoral conduct and other matters, which nothing in the evidence produced at the trial in the court below indicated to have any connection with the proper consideration of the report of the trustees of the church then being considered by the congregation. The plaintiff, it is undisputed, continued to talk for a long time, although the defendant had endeavored to induce him to take his seat. The defendant testified that, while he was trying to persuade the plaintiff to cease talking, some members of the congregation wanted to "set him down" and that he, the defendant, told them not to touch him. He testified that he said to the plaintiff, "Samuel, your object is to get us into trouble here and disgrace us," to which the plaintiff replied, "Yes, that is my object, and I will not stop until I do it." There was a special police officer at the meeting, who, under the evidence, had the same authority as a constable to make arrest. The special officer went out and brought in two regular police officers of the city. One of the regular officers, called as a witness by the plaintiff, testified that the plaintiff was standing on the floor up near the front of the church and he and the defendant were having a hot argument and the defendant asked the officers to place the plaintiff under arrest and he would prefer a charge against him in the morning. The officers took the plaintiff into the vestibule of the church and the police officer there said to the special officer that they would assist in making the arrest if the special officer would prefer a charge against the plaintiff. The officers then took the plaintiff to the station house, and the record of the magistrate offered in evidence discloses that the special officer did make an informal charge of "disorderly conduct at a church meeting"

against the plaintiff. The plaintiff remained in custody about three hours, when he was admitted to bail for his appearance the next morning, when, after hearing, the magistrate adjudged him guilty of disorderly conduct and imposed a nominal fine. The plaintiff caused the record of the magistrate to be removed to the common pleas upon certiorari, which court reversed the judgment, because of defects in the record.

The defendant was asked upon cross-examination by plaintiff's counsel as to where and when he had been married, and had answered that he was married in Richmond, Virginia, in 1901. Counsel for plaintiff then asked the question, "Who married you?" This question was objected to by counsel for the defendant, which objection was by the court below very properly sustained. The question of the legality of the marriage of the defendant could have no bearing upon the question at issue in this case, nor upon the competency or credibility of the witness, it not being suggested that the marriage was bigamous. This ought to have put an end to that line of inquiry, but the court subsequently permitted the plaintiff to cross-examine the defendant as to the legitimacy of his son and daughter, who must have been born long before the defendant became connected with the Central Baptist church, for at the time of the trial they had attained mature years and each of them had actually married. The first specification of error must be dismissed, under the rules of this court, for the reason that it refers to three exceptions to different rulings of the court, but when the case comes to be retried such questions ought not to be permitted in cross-examination of the defendant.

The arrest in this case was made without a warrant and the evidence was sufficient to sustain a finding that it was made by the direction of the defendant and that he had told the officer that he would appear the next morning and make a charge against the plaintiff. There

was, however, no evidence which would have warranted a finding that the defendant had directed the officer to enter against the plaintiff a charge of disorderly conduct as defined by the Act of May 2, 1901, which enacts that persons wilfully doing certain things, in the act specifically defined, shall be guilty of the offense of disorderly conduct, and confers jurisdiction upon magistrates to summarily try and convict the offender.   The learned judge of the court below, in his charge to the jury, impartially and fully recited the evidence produced by the parties, but absolutely failed in his general charge to instruct the jury as to the law applicable in the case.   The only instruction as to the law of the case consisted in the affirmance of the points submitted by the plaintiff.   The fourth request for instruction submitted by the plaintiff stated that the plaintiff "was arrested on the charge of disorderly conduct, which is defined by the Act of May 2, 1901, as follows"; and here incorporated the entire language of that statute, and then came the instruction, "Therefore, if you believe that the defendant ordered the arrest of the plaintiff, and further believe, that defendant has failed to convince you by a preponderance of the evidence that he had any reasonable or probable cause for believing the plaintiff guilty of disorderly conduct as defined by the Act of 1901, your verdict should be for the plaintiff in a substantial amount."   This point the court affirmed without qualification.   There was nothing in the evidence from which the jury should have been permitted to infer that this defendant, or the special officer who made the written charge had not made the same statement of facts to the magistrate which this defendant had testified to at the trial in court.   There was nothing in the facts disclosed by the evidence, nor in the circumstances, which tended to fix this defendant with liability for the blunder of the magistrate, in treating the case as one warranting a summary conviction, instead of an indictable offense which ought to have been returned to the

Court of Quarter Sessions. Even if it be assumed that the defendant authorized the special officer to make an information charging the plaintiff with "disorderly conduct at a church meeting," the information was sufficient foundation for an indictment for disturbing a public meeting. If the defendant was warranted in asking the officers to arrest the plaintiff, at the time the arrest was made in the church meeting, the arrest was lawful, although the offense of which the plaintiff was guilty was not that defined by the Act of May 2, 1901, P. L. 132.

False imprisonment consists in the confinement or detention of the person without sufficient authority : which authority may arise either from some process from the courts of justice, or from some warrant from a legal officer having power to commit; or from some other special cause warranted, in the circumstances, either by common law or statute. The constitutional provision that, "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures," etc., is not to be construed as meaning that there shall be no arrest without a warrant. "To have said so would have endangered the safety of society......The whole section indeed was nothing more than an affirmance of the common law": Wakely v. Hart, 6 Binney 318. When an arrest is made without a warrant the presumption is that the defendant is not guilty; that the act in itself is wrongful, and malice will be inferred from the want of probable cause, so far at least as to sustain the action. The burden is upon the defendant, when the party arrested seeks to recover damages, to prove that the imprisonment was by authority of law. The question of probable cause for the arrest is one of law, upon this point there is no difference, upon principle, between an action of this character and one for malicious prosecution. Where the facts are in controversy the case must be submitted to the jury, in which event it is the duty of the court to instruct them what facts will constitute probable cause, and submit to them only the question of

such facts: McCarthy v. DeArmit, 99 Pa. 63.   Some of
the facts in this case were in controversy, and the court
properly refused the request of the defendant for binding
instructions; the case was for the jury.   The following
facts were, however, undisputed.   The congregation was
lawfully assembled in regular meeting and a large num-
ber of people were in attendance.   The report of the trus-
tees had been regularly submitted and was the question
before the meeting.   This plaintiff arose and made a long
and violent attack upon the pastor of the church who was
presiding at the meeting, saying among other things, that
the pastor, this defendant, was the father of three bastard
children in the church.   There was no evidence in the
case which would have warranted a finding that the de-
fendant was even a member of the board of trustees or
that the charges made by this plaintiff had any relevancy
to the question before the congregation.

The defendant produced evidence tending to establish
that the harangue of the plaintiff at the meeting was
very vile, loud and violent, tending to create disturbance;
that the defendant had to use his influence to prevent
other members of the congregation from forcibly com-
pelling the plaintiff to take his seat; that the plaintiff
had been talking for an hour and a half; that he had de-
clared his purpose was to disgrace the congregation and
that he would not stop until he had done it and that plain-
tiff was still upon his feet disturbing and interfering
with the meeting at the time he was arrested.   If this
testimony was believed it was sufficient to warrant a
finding that this plaintiff was, at the time he was ar-
rested, engaged in a wilful, malicious and persistent dis-
turbance of the meeting of the congregation, lawfully
assembled.

Acts injurious to private persons, which tend to ex-
cite violent resentment, and thus produce fighting and
the disturbance of the peace of society, are themselves
indictable, at common law:   Com. v. Taylor, 5 Binney
281.   One who is actually engaged in interfering with

and disturbing a meeting of a large number of persons who come together in an orderly way for a lawful object may be arrested without a warrant. If arrested, and held to answer for this, the prisoner would be held to good behavior in the meantime: Commonwealth v. Jeandell, 2 Grant 506. The Act of March 31, 1860, Sec. 31, P. L. 392, made the wilful and malicious disturbance of meetings of a certain character, convened for a number of purposes, an indictable offense, to be punished in a manner specified. It was, however, subsequently held by the Supreme Court that the wilful and malicious interference with and disturbance of public meetings lawfully assembled, but not within the terms of that statute, still remained indictable at common law: Campbell v. Com., 59 Pa. 266. The principle upon which all these cases were decided was that the wilful disturbance of a public meeting where a large number of people are lawfully assembled, is a breach of the public peace, for the reason that it tends to provoke conflicts. The offense of disturbing a public meeting is not a felony. Neither an officer nor a private person has authority to arrest another for a bare breach of the peace after it is over. When, however, one is actually engaged in an undertaking which involves a breach of the peace, a private person may arrest him and deliver him to the constable, who may carry him before a justice of the peace, in order to his finding sureties for the peace: Hawkins Pleas of the Crown, Book 1, Chap. 63, Sec. 11; Book 2, Chap. 12, Sec. 20, and Chap. 13, Sec. 8. The evidence produced by the defendant was sufficient to warrant a finding that the plaintiff, at the time of his arrest, was actually engaged in wilfully and maliciously disturbing a public meeting. The court should have instructed the jury that, if they found such to be the fact, the defendant had the right to ask the officers to make the arrest. The third and fourth specifications of error are sustained.

The judgment is reversed and a new venire awarded.