426 A.2d 1160

COMMONWEALTH of Pennsylvania

v.

Robert ANDREWS, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed March 6, 1981.

Petition for Allowance of Appeal Denied May 13, 1981.

Paulette Balogh, Pittsburgh, for appellant.

Kathryn L. Simpson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, P. J., SHERTZ and WIEAND, JJ.

SHERTZ, Judge:

Appellant was convicted in a non-jury trial of two counts of Receiving Stolen Property [1] and one count of Forgery.[2] In this direct appeal from a Judgment of Sentence entered on February 5, 1980, Appellant asserts that (1) the trial court erred in refusing to quash the Complaint filed against him, (2) the trial court erred in granting a Rule 1100 extension to the Commonwealth, and (3) there was no probable cause for his arrest. Our review of the record indicates that no reversible error was committed and we therefore affirm the Judgment of Sentence.

The facts of this case are uncontroverted. On July 3, 1979, Appellant attempted to cash a $458.00 payroll check at the East Liberty location of Sears, Roebuck & Co., Pittsburgh. The check, dated June 29, 1979, was made out to Appellant and was purportedly drawn and signed by John D. Zotis of Zotis Quick Food Service.

At the Sears store, Appellant was informed by a cashier that store policy prohibited more than $250.00 in cash being paid out on any check. Appellant therefore agreed to have $208.00 credited to his Sears charge account and to take the remaining $250.00 in cash. Before cashing the check, the cashier took it to her supervisor, who phoned Mr. Zotis to confirm its genuineness. When Mr. Zotis stated that the check was forged and had been reported stolen, the supervisor called a Sears security guard and informed him that Appellant was attempting to pass a forged check. The guard observed Appellant for approximately ten minutes and then arrested him as he left the cashier's area and

1. 18 Pa.C.S.A. § 3925.

2. 18 Pa.C.S.A. § 4101.

walked toward the escalators in the store. During a subsequent search of Appellant, the security guard discovered three credit cards in Appellant's possession, each bearing the name of Richard Hemphill.[3] The Pittsburgh police were summoned, and, upon their arrival, they arrested Appellant.

The information charging Appellant with the crimes of Forgery and Receiving Stolen Property was filed on October 26, 1979. Arraignment followed on November 9, 1979, fourteen days later, rather than within the ten day period provided in Pa.R.Cr.P., Rule 303.[4] Appellant, therefore, argues that, because Rule 303 was not complied with, the Complaint against him should have been quashed.

■ We begin our assessment of Appellant's contentions with an analysis of the function of Rule 303.[5] It is well settled that an arraignment is intended to fulfill three primary purposes: to make a definite identification of the accused, to give the accused notice of the charges against him and to give the accused the opportunity to enter a plea. *Commonwealth v. Phelan*, 427 Pa. 265, 234 A.2d 540 (1967) *cert. denied*, 391 U.S. 920, 88 S.Ct. 1803, 20 L.Ed.2d 657 (1968).

■ In the instant case, Appellant does not allege that he was prejudiced by the fourteen day lapse between the filing of the information and his arraignment. Further, it is apparent from the record that the purposes of arraignment,

---

3. Dr. Hemphill later testified at trial that on June 18, 1979, his wallet containing the credit cards had been stolen.

4. Rule 303 reads in pertinent part:
   "(a) Arraignment shall be in such form and manner as provided by local court rule and notice thereof shall be given to the defendant as provided in Rule 309 or by first-class mail. Unless otherwise provided by local court rule or waived by a defendant, who has counsel, or unless otherwise postponed by the court for cause shown, arraignment shall take place no later than ten days after the indictment or information has been filed."

5. To aid in our interpretation of Rule 303, we look to its predecessor, Pa.R.Cr.P., Rule 317 (renumbered Rule 303 on June 29, 1977) and the cases thereunder. *Higher Education Assistance Agency v. Abington Memorial Hospital*, 478 Pa. 514, 387 A.2d 440 (1978).

as stated above, were fulfilled. Appellant would have this Court conclude that the violation of Rule 303 warrants dismissal of the charges against him, albeit absent an allegation or showing of prejudice.[6] We decline to do so and conclude, instead, that the delay, though it is to be condemned, was harmless error inasmuch as no prejudice to Appellant resulted from the failure to comply strictly with the requirements of Rule 303. *See, e. g., Commonwealth v. Paskings*, 447 Pa. 350, 354, 290 A.2d 82, 84 (1972); *Commonwealth v. Banks*, 447 Pa. 356, 361, 285 A.2d 506, 508 (1971); *Commonwealth v. Jennings*, 446 Pa. 294, 303, 285 A.2d 143, 148 (1971).

■ Appellant next argues that the trial court committed reversible error in granting a Rule 1100 extension to the Commonwealth. In the instant case, the Commonwealth had until December 30, 1979, to bring Appellant to trial. Appellant's case was listed for trial on December 19, 1979, and held by the court until December 21, 1979, on which date Appellant, for the first time, requested a jury trial. Because of this request, a postponement of the trial was necessitated. On December 28, 1979, the Commonwealth petitioned for an extension of time under Rule 1100(c), asserting that it had been ready to proceed to trial on December 21, 1979, that the final trial date was December 30, 1979, but that the earliest date on which a jury would be available was January 2, 1980. After a hearing, the Petition was granted over Appellant's objection. Appellant argues that the Petition for Extension should not have been granted inasmuch as he was not at fault in causing the delay.

Appellant's contention lacks merit, since the facts establish that the conditions necessary for a proper Rule 1100 extension were present. The record indicates that the Commonwealth has proceeded with due diligence, that trial was scheduled for the earliest date consistent with the court's

6. Appellant would also have us equate this violation to a violation of Rule 1100. We do not believe that such an analogy is apt. While Rule 1100 is designed to protect a defendant's constitutional right to a speedy trial and must, therefore, be strictly construed, Rule 303 does not implicate such a constitutional guarantee.

business and that there were valid reasons for the delay. *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). Assuming, arguendo, that the delay was not caused by Appellant, that consideration is not relevant where, as here, the Commonwealth was ready to proceed to trial on December 21, 1979 but judicial delay necessitated the postponement. *Commonwealth v. Cimaszewski*, 261 Pa.Super. 39, 395 A.2d 931 (1978). Therefore, the Rule 1100 extension was properly granted and did not violate Appellant's right to a speedy trial.

Appellant finally argues that no probable cause existed for his arrest by the security guard. The thrust of Appellant's argument is that he was "under arrest" when he was being observed by the security guard and that, at that time, there was no probable cause for this "arrest".

There are two aspects of this argument that must be addressed. First, we reject Appellant's contention that mere observation is equivalent to arrest. An arrest may be effectuated by any act intended to take a person into custody and subject him to the actual control and will of the arresting person. *Commonwealth v. Silo*, 480 Pa. 15, 389 A.2d 62 (1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94 (1979). We do not view the security guard's observation of Appellant as falling within the purview of an arrest, since said observation cannot be deemed to be an act evidencing an intention to take Appellant into custody or to restrain his freedom. *See Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Steding v. Commonwealth*, 480 Pa. 485, 391 A.2d 989 (1978); *Commonwealth v. Mills*, 235 Pa.Super. 173, 340 A.2d 900 (1975). Consequently, no arrest took place until the security guard actually stopped Appellant and took him into custody.

Second, we note that, as a lay person, the security guard was entitled to arrest Appellant when the guard was informed that Appellant was attempting to pass a forged check. *Commonwealth ex rel. Miller v. Myers*, 187 Pa.Super. 565, 146 A.2d 145 (1958). At that moment, a felony had

actually been committed, and the security guard had reasonable grounds to believe that Appellant was the person who committed it. *Commonwealth ex rel. Duncan v. Rundle*, 424 Pa. 385, 387, 227 A.2d 659, 661 (1967).

Appellant's arrest by the Pittsburgh police was clearly supported by probable cause. It is well established that, for purposes of making a warrantless arrest, a finding of probable cause may be based entirely upon hearsay information. *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979). Here the information supplied to the arresting officer was sufficient to indicate that a felony had been committed and that Appellant was the felon. *Wagner*, 486 Pa. at 556, 406 A.2d at 1030. The arresting police officer, therefore, had probable cause to make the arrest.

The Judgment of Sentence is accordingly affirmed.

WIEAND, J., concurs in the result.