462 A.2d 1374

**COMMONWEALTH of Pennsylvania**

v.

**William N. CORLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1983.

Filed July 15, 1983.

Petition for Allowance of Appeal Granted Feb. 8, 1984.

328

L. Carter Anderson, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, CIRILLO and LIPEZ, JJ.

BROSKY, Judge:

This appeal is from the denial of a Post Conviction Hearing Act (PCHA) petition. Appellant argues that his arrest by security officers was illegal and that, consequently, the evidentiary fruits of that arrest would have been suppressed had the issue been raised pre-trial. His PCHA petition requested either discharge or a new trial on the

grounds that he was denied ineffective assistance of counsel in that trial counsel withdrew a suppression motion. The PCHA petition was denied and we affirm.

## Facts

The factual situation of appellant's arrest is as follows. Appellant robbed an individual at gunpoint in the men's room of a department store and then shot the victim in the cheek. Robert Greer, a security investigator for the store, received some information [1] over his radio and then observed appellant running toward the main escalator. Greer followed appellant out of the store. He saw appellant with a gun in his hand and observed appellant put it in his jacket pocket. Appellant was then arrested by Greer and a security guard from a second department store.[2] The jacket and the gun which it contained was taken from appellant. Greer took appellant to a detention room in the security office of his department store. In the detention room, a store detective removed a wallet from appellant, which was later identified as the victim's. After all of the above events, Philadelphia police arrived and took appellant into custody.

Prior to the trial, counsel filed a motion to suppress the evidence obtained as a result of the arrest. The motion alleged that the arrest was illegal, lacking probable cause. However, at the suppression hearing, counsel withdrew the motion and stipulated that there had been probable cause for the arrest. At the PCHA hearing, trial counsel testified that he had withdrawn the motion and stipulated that there was probable cause because he knew what information the arresting person was given over his radio. By the time of the PCHA hearing, three and a half years later, trial counsel could not recall what that information was.

1. The information received by Greer is not established by the record.

2. After leaving Greer's store, appellant briefly entered a second department store.

332

■ The issue abandoned with the suppression motion withdrawal[3] and revived in the PCHA petition is the same: whether there was lacking the type of probable cause necessary for a citizen's arrest. If the arrest was illegal, then the evidentiary fruits of that arrest must be suppressed. *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

■ The PCHA petition is the first time appellant has been represented by counsel other than the counsel who represented him at the suppression hearing. The issue before us is, therefore, properly preserved. *Commonwealth v. Lewis*, 463 Pa. 180, 344 A.2d 483 (1975).

■ The task before us is to determine whether counsel's withdrawal of the suppression motion "had some reasonable basis designed to effectuate his client's interest." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599 at 604, 235 A.2d 349 at 352 (1967).[4] One method of meeting this test is to find that the issue not raised was meritless.[5] *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Thus, in order to rule on appellant's claim of trial counsel ineffectiveness here, we must evaluate the merits of the withdrawn suppression motion. Namely, if it had not been withdrawn, should it have been granted?

3. The testimony at the PCHA hearing was inconclusive as to whether appellant had been consulted by trial counsel about the withdrawal of this motion and whether the legal issue involved had been explained to him.

4. As the PCHA court noted in its opinion:
There is a presumption that counsel's representation was competent. *Commonwealth v. Murray*, 452 Pa. 282, 305 A.2d 33 (1973). The burden of proving incompetency of counsel in a post conviction hearing act petition rests upon the defendant who makes such an assertion. *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976).

5. This is based on the sound reasoning that raising a meritless issue would not have had a "reasonable basis" to advance the client's interests.

In pursuing this enquiry, we will engage in a two-step analysis. First, are there any legal consequences to a finding that this citizen's arrest was illegal? (We hold that there are.) Second, was this arrest illegal? (We find that it was not.)

### Legal Consequences of an Illegal Arrest

■ It is long-established law that the fruits of an illegal search made by an individual who was not acting for the state are not suppressible under the exclusionary rule. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Commonwealth v. Dingfelt,* 227 Pa.Super. 380, 323 A.2d 145 (1974).[6]

■ Unlike the private searcher who can be acting for his own ends,[7] one making a citizen's arrest[8] is, definitionally, acting under the authority of the state. The legitimating factor which distinguishes his actions from an unprivileged battery or kidnapping is the state recognition and sanction of this act.[9] Of course, in any case which would come before the criminal courts, the police and prosecution would also have ratified the citizen's arrest by taking the arrestee into custody and by seeking to use any evidence that was the fruit of that arrest.[10] Since the very occurrence of the act is freighted with the authority of the state, if that act is committed improperly, the fruits of that arrest must be suppressed.

**6.** The wisdom of this rule has been called into question. See Burkoff, Not So Private Searches and the Constitution, 66 Cornell L.Rev. 627 (1981); *Commonwealth v. Murray,* 423 Pa. 37, 52, 223 A.2d 102, 110 (1966).

**7.** *Commonwealth v. Cosby,* 234 Pa.Super. 1, 335 A.2d 531 (1975).

**8.** The arrest of appellant occurred in a citizen's arrest context.

**9.** As will be seen in the next section, in Pennsylvania this operates through the common law tradition as interpreted and modified by the courts of this Commonwealth.

**10.** On ratification generally, see *Commonwealth v. Eshelman,* 477 Pa. 93, 383 A.2d 838 (1978).

A case recently decided by the U.S. Supreme Court reviews and restates the elements necessary for "state action."

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right to be fairly attributable to the state. These cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because ... his conduct is otherwise chargeable to the state.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744 at 2754, 73 L.Ed.2d 482 (1982).

These conditions are met here.

The test has also been set out by the U.S. Supreme Court in a criminal context.

> The critical factor, as the United States Supreme Court has stated, "is whether [the private individual] in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state ..."
> *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971).

*Commonwealth v. Borecky*, 277 Pa.Super. 244 at 249, 419 A.2d 753 at 755–6 (1980).

Again, it is clear that in a citizen's arrest, legitimated by state law, and ratified by the police and prosecution, the arresting person is an "instrument" of the state.

To hold, as we do here, that the fruits of an illegal arrest by an individual must be suppressed, is not inconsistent with the rule stating that the fruits of an illegal search and seizure of things by an individual are not suppressible. This is so because an arrest by an individual is necessarily undertaken under the authority of the state; while a search and seizure of things may, of course, be carried out for personal purposes, without such authority.

This holding acts to fill a gap in the law, rather than to contradict established law. The usual case dealing with private actors and the Fourth Amendment involves searches and seizures of things; not the seizure of a person. A few cases have dealt with the suppressibility of the fruits of an illegal citizen's arrest.

A 1949 case out of Kentucky, *Thacker v. Commonwealth*, 310 Ky. 702, 221 S.W.2d 682, held that a person making a citizen's arrest "is acting for and on behalf of the sovereignty." Therefore it followed that he would be subject to Kentucky's constitutional provision which is parallel to the Fourth Amendment of the Federal Constitution. *Thacker*, supra, at 683.

The legality of a citizen's arrest was examined by this court recently. *Commonwealth v. Andrews*, 285 Pa.Super. 100, 426 A.2d 1160 (1981).[11] The arrest was found to have been legal; but there would have been no purpose to that enquiry and finding if legal consequences did not flow from the finding. The only apparent legal consequence of illegality of the arrest would have been the suppression of the fruits of the arrest. This was not made explicit in *Andrews*, but here we make it so.

We hold, as a matter of federal constitutional law, that the fruits of an illegal citizen's arrest are subject to the full action of the Fourth Amendment and to the exclusionary rule. On separate, independent and adequate state grounds, applying Article 1, Section 8 of the Constitution of this Commonwealth, we hold that the same results also obtain.[12]

11. See also *Jack v. Rhay*, 366 F.2d 191 (9th Cir., 1966); *U.S. v. Fannon*, 556 F.2d 961 (9th Cir., 1977) (reversed by that Circuit *en banc* on an interpretation of the facts, not on a repudiation of the statement of law); and *State v. Helfrick*, 183 Mont. 484, 600 P.2d 816 (S.C., 1979).

12. Of course, states can choose to accord greater protection to the individual than is mandated under federal law. *Cooper v. California*, 386 U.S. 58, at 62, 87 S.Ct. 788 at 791, 17 L.Ed.2d 730 (1967).

## Illegality of Arrest

■ We now turn to the core requirement of appellant's case, the illegality of the arrest. Such illegality would be due to not meeting the requirements of a proper arrest by an individual. In citizen's arrest cases, the requisite standard of probable cause is considerably higher than that for arrests made by the police.

■ The standard of probable cause to be met in a citizen's arrest for a felony cannot be met here. Greer neither observed the commission of a felony nor does the record establish that he knew of the commission of a felony.[13] The only potentially criminal act he had knowledge of was that appellant was holding a handgun. Possession of a gun does not, in itself, rise to the level of a felony. 18 Pa.C.S.A. § 6108. If, in addition to this observation, Greer had learned other facts about the robbery it is possible that an arrest for that felony would have been proper. But we cannot decide that as there is no evidence on the record regarding what information Greer received on his radio.

The only other basis for legitimating the citizen's arrest made by Greer is a citizen's arrest for a misdemeanor. It is uncontradicted that Greer did see appellant holding a gun in his hand on a center city Philadelphia street. There is no doubt that this could constitute a misdemeanor, a breach of the peace. What is not clear is whether a citizen's arrest can be made for a misdemeanor.

The proper focus here is on Pennsylvania state law regarding citizen's arrests.

> If the arrest is legal under state standards and not violative of federal constitutional rights the arrest and the search incidental thereto is valid. And in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. *United States v. DiRe*, 332 U.S. 581, 589, 68

13. We do not hold, either impliedly or in *dicta*, that knowledge of a felony he hadn't witnessed would legitimate a citizen's arrest. We simply do not reach this as such knowledge was not established to have been present here.

S.Ct. 222 [226] 92 L.Ed. 210 (1948); *Ker v. California*, 374 U.S. 23, 34, 83 S.Ct. 1623 [1630] 10 L.Ed.2d 726 (1963).

*Montgomery v. U.S.*, 403 F.2d 605, 608 (8th Cir., 1968).

There is a difference of opinion within this state on the propriety of a citizen's arrest for a non-felony. The common law rule would allow an arrest such as the one made here.

> Arrest for a misdemeanor constituting a breach of the peace was also permitted [at common law] when immediate apprehension was necessary to preserve or restore public order.

Note, the Law of Citizen's Arrest, 65 Colum.L.Rev. 502, 503 (1965). See also Fisher, Laws of Arrest, 125 (1967), and *Carroll v. U.S.*, 267 U.S. 132 at 157, 45 S.Ct. 280 at 286, 69 L.Ed. 543 (1925).

This traditional, common law view was repeated, albeit in *dicta*, in *Samuel v. Blackwell*, 76 Pa.Super. 540, 547 (1921). Later, a Common Pleas Court held that under this rule a private citizen could make a citizen's arrest for driving under the influence on a public highway if such a breach of the peace occurred in his presence. *Commonwealth v. Giles*, 14 Adams L.J. 34, 57 D & C2d 13 (1972).

However, this line of cases was contradicted, again in *dicta*, by a 1964 Superior Court opinion, *In re Stanley*, 204 Pa.Super. 29, 201 A.2d 287 (1964). "A constable's authority to ... arrest on sight for breach of the peace ... is not conferred upon private citizens ..." *Stanley*, supra, 204 Pa.Superior at 32, 201 A.2d 289.

This statement from *Stanley* was quoted, yet again in *dicta*, in *Commonwealth v. Gregg*, 262 Pa.Super. 364, 366, 396 A.2d 797, 798 (1979). The opinion added that, "A lay person, i.e., a person lacking police powers, can only effectuate an arrest when the same citizen personally observes a felony." *Id.* In neither *Stanley* nor *Gregg* was this statement necessary for the disposition of the case. Nor was

there any indication that the courts were emphasizing felony as opposed to a misdemeanor. Indeed, to the contrary, the facts in each case related more to the personal observation element than to the felony/misdemeanor distinction.

Thus, except for one Common Pleas case on point, and contradictory Superior Court *dicta*, there is no Pennsylvania law on this issue. We are, therefore, free to address the issue, free from binding precedential encumbrance.[14]

■ In view of the foregoing, we hold that a citizen's arrest can be made for a breach of the peace that is personally observed by the arrestor. Two policy considerations support this. First, it is desirable that citizens be encouraged to stop breaches of the peace. Second, it is unreasonable to put citizens at their peril in deciding, on the spur of the excited moment, which violations they observe are breach of the peace misdemeanors and which are felonies. Such an exercise might well tax the abilities of a learned member of the criminal bar or bench—it is certainly an unreasonable task to impose upon our citizenry. The citizen's arrest of appellant was, therefore, not illegal.

### Conclusion

■ Having found that appellant's arrest was lawful, it follows that appellant's suppression motion, based as it was on the illegality of the arrest, was meritless. Since appellant would not have prevailed on this issue even if the suppression motion had not been withdrawn, counsel cannot be said to have been ineffective for not proceeding with it.

The denial of the PCHA petition is consequently affirmed.

14. A recent case of this Court treated a related, but distinct, issue: the validity of a citizen's arrest for a summary offense. *Commonwealth v. Stahl*, 296 Pa.Super. 507, 442 A.2d 1166 (1982) (Per O'Kicki, J., with two Judges concurring in the result). See Pa.R.Crim.P. 51. Judge O'Kicki wrote that a citizen's arrest could not be made for a summary offense. Involving, as it does, a summary offense, *Stahl* is not on point with the issue before us—the validity of a citizen's arrest for a breach of the peace misdemeanor.