J-E03008-15

2016 PA Super 49

IN RE:  APPLICATION OF JOHN P.  : IN THE SUPERIOR COURT OF
CLADER, TRADING AS LT : PENNSYLVANIA
INVESTIGATIONS, FOR A PRIVATE :
DETECTIVE LICENSE :
:
:
APPEAL OF: COMMONWEALTH OF :
PENNSYLVANIA : No. 2094 EDA 2014

Appeal from the Order Entered June 26, 2014
In the Court of Common Pleas of Pike County
Civil Division at No(s): CV128-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OTT, J., STABILE, J. and JENKINS, J.

OPINION BY GANTMAN, P.J.:                **FILED FEBRUARY 24, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the order

entered in the Pike County Court of Common Pleas, which granted the

petition of Appellee, John P. Clader, trading as LT Investigations, for a

private detective license, with certain restrictions, pursuant to the Private

Detective Act of 1953, 22 P.S. § 11, *et seq*.  We reverse.

The relevant facts and procedural history of this case are as follows.

On June 27, 2013, Mr. Clader was appointed as a school police officer for the

Wallenpaupack Area School District.  Under this appointment, the court

authorized Mr. Clader to possess and execute all powers and duties

described in 24 P.S. § 7-778(c)(1-3) (discussing powers and duties of

appointed school police officers).  Mr. Clader's current title is the Director of

School Security for the Wallenpaupack Area School District.  The school

district employs three full-time and two part-time school police officers. Prior to his appointment as the Director of School Security, Mr. Clader worked for more than twenty-five years as a Pennsylvania State Police officer, in varying roles.

The "ultimate goal" of the Wallenpaupack Area School District's School Resource Officer Program is to "deter students from involvement in criminal acts, alcohol and drug use, theft, violence, gang activity and other forms of socially unacceptable behavior." (Petitioner's Exhibit 1, Hearing June 3, 2014, at 1). The objectives of the program include, but are not limited to, investigating and documenting any violation of law and making arrests for summary offenses; and detaining students who violate any law that constitutes a misdemeanor or felony. (*Id.*) During his employment as a school police officer, Mr. Clader has issued citations for summary offenses which took place on school property and has participated in six or seven investigations for misdemeanor or felony violations. Mr. Clader has not made arrests for any misdemeanor or felony offenses; Mr. Clader turned those cases over to the state police and assisted with their investigation.

In his current role as Director of School Security, Mr. Clader obtained on September 30, 2013, an Originating Agency Identifier ("ORI") assignment number from the International Justice and Public Safety Information Sharing Network. The ORI assignment number permits Mr. Clader to access driver's license, registration, and "hot file" (stolen vehicle) information but prohibits

Mr. Clader from accessing criminal history information (which is restricted to criminal justice/law enforcement). Mr. Clader uses the ORI assignment number to file non-traffic citations or other documents with the district justice courts. Notably, the ORI assignment number allows Mr. Clader to access the Commonwealth Law Enforcement Assistance Network ("CLEAN"), accessible only by duly authorized agencies. Upon informing Mr. Clader about his acquisition of an ORI assignment number, the Pennsylvania State Police stressed to Mr. Clader the importance of his access to CLEAN, as follows:

> It is important that all persons using the Commonwealth Law Enforcement Assistance Network (CLEAN) realize CLEAN by definition is a system to be only utilized for the administration of criminal justice or your required duties. The data transmitted by the CLEAN system is documented criminal justice information, and access to that information is restricted to duly authorized agencies. Please inform all persons employed by your agency, the information obtained from CLEAN for unauthorized purpose[s], or the release of any information to unauthorized persons, is a violation of CLEAN system security regulations. Such conduct could place your agency and/or the employee in jeopardy of being held civilly liable. Additionally, violation of CLEAN security could jeopardize your agency's access and could cause the suspension or revocation of future CLEAN access to the responsible employee. In certain circumstances, dissemination of some types of information via CLEAN, can be a violation of law.

(Petitioner's Exhibit 2, Hearing June 3, 2014, at 1).

On January 23, 2014, Mr. Clader filed a petition in the trial court for a private detective license. The Commonwealth filed an answer, opposing Mr. Clader's petition on February 11, 2014. The Commonwealth alleged that the

issuance of a private detective license to Mr. Clader, who possesses law enforcement powers, creates the potential for abuse and poses a conflict of interest. The court held a hearing on the petition on June 3, 2014. On June 26, 2014, the court granted Mr. Clader's request for a private detective license subject to the following restrictions:

> This Certificate of License is also issued subject to the limitation that [Mr. Clader], who has previously been appointed as a school police officer for the Wallenpaupack Area School District, shall not engage in any private detective business, as defined under the Act, in any matter involving school administrators, teachers, employees, officials, parents or students of the Wallenpaupack Area School District without prior written approval of the [c]ourt and notice thereof to the Pike County District Attorney.

(Order, filed June 26, 2014, at 2).

The Commonwealth timely filed a notice of appeal on July 24, 2014. On July 28, 2014, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which the Commonwealth timely filed on August 8, 2014. On April 20, 2015, a panel of this Court affirmed the trial court order, with one dissent. On May 4, 2015, the Commonwealth filed an application for reconsideration or *en banc* reargument; and this Court granted *en banc* review.

The Commonwealth raises two issues for our review:

> WHETHER THE [TRIAL] COURT COMMITTED AN ERROR WHEN GRANTING THE APPLICANT A PRIVATE DETECTIVE LICENSE PURSUANT TO THE PRIVATE DETECTIVE ACT, 22 P.S. SECTION 11 *ET SEQ.*, WHEN [THE] APPLICANT IS AN APPOINTED POLICE OFFICER WITH LAW ENFORCEMENT POWERS?

- 4 -

> WHETHER THE [TRIAL] COURT COMMITTED AN ERROR WHEN GRANTING THE APPLICANT A PRIVATE DETECTIVE LICENSE PURSUANT TO THE PRIVATE DETECTIVE ACT, 22 P.S. SECTION 11 *ET SEQ.*, WHICH IMPOSES LIMITATIONS UPON THE APPLICANT'S BUSINESS BASED UPON HIS EMPLOYMENT AS AN APPOINTED POLICE OFFICER, WITHOUT STATUTORY AUTHORITY?

(Commonwealth's Brief at 8).

For purposes of disposition, we combine the Commonwealth's issues. The Commonwealth explains that under the Private Detective Act of 1953, Common Pleas courts in Pennsylvania are empowered to appoint persons of competence and integrity as private detectives. The Commonwealth argues that law enforcement officers, corrections officers, probation officers, and elected constables cannot simultaneously hold a license as a private detective as a matter of public policy. The Commonwealth contends the public policy underlying these court decisions is that, if granted a private detective license, persons holding public office or possessing statutorily enumerated powers and duties for the benefit of the public might use that authority for the benefit of private persons.

The Commonwealth asserts Mr. Clader possesses statutorily enumerated powers and duties in his capacity as a school police officer, similar to law enforcement officers, corrections officers, probation officers, and elected constables. The Commonwealth maintains that upon his appointment as a school police officer, the court granted Mr. Clader the full powers and duties under 24 P.S. § 7-778(c)(1-3), without restriction. In

other words, by virtue of Mr. Clader's appointment, he has the authority to arrest and to exercise the same powers as municipal police officers in the jurisdiction where the Wallenpaupack schools are located. The Commonwealth highlights Mr. Clader's requirement to wear a shield identifying himself as a school police officer. The Commonwealth emphasizes the Wallenpaupack School District's objectives for school police officers are to, *inter alia*, protect the school campuses from violations of any law, develop police procedures for each of the campuses, investigate and document any violation of law and make arrests for summary offenses, and detain students who violate any law that constitutes a misdemeanor or felony. The Commonwealth avers Mr. Clader has issued citations for summary offenses and has participated in the investigation of misdemeanor and felony offenses during his one year as a school police officer. The Commonwealth submits these acts are at the heart of a law enforcement officer's duties—investigation and charging.

The Commonwealth also stresses that Mr. Clader obtained an ORI assignment number, giving him access to driver's license, registration, and stolen vehicle information. The Commonwealth claims private citizens, including private detectives, cannot obtain ORI assignment numbers, which are accessible only by law enforcement or public safety agencies. The Commonwealth submits Mr. Clader possesses law enforcement-like powers by virtue of his appointment as a school police officer, so the same public

policy that limits other law enforcement should also prohibit Mr. Clader from obtaining a private detective license due to the potential for abuse and conflict of interest.

The Commonwealth further complains the court lacked authority to issue a private detective license to Mr. Clader "with certain restrictions," because the Private Detective Act of 1953 contains no provision permitting a court to grant a "limited" or "qualified" license. The Commonwealth explains the court imposed a restriction that Mr. Clader give notice to the district attorney and receive court approval before engaging in private detective work for any school administrator, teacher, employee, official, parent or student of the school district. The Commonwealth contends the court's restriction actually demonstrates the potential for misuse and conflict of interest where the court put in place a procedure for examining whether a conflict exists on a case-by-case basis. The Commonwealth submits the court's restriction is unsound because the public policy at issue is not only to prevent actual abuse of power but also to prevent the mere **appearance** of impropriety or **potential** for abuse of power. The Commonwealth concludes the court erred when it granted Mr. Clader's petition for a private detective license while he is also a school police officer, the court lacked statutory authority to impose restrictions on the license, and this Court should reverse.

Mr. Clader argues that none of the cases prohibiting a law

enforcement-type officer from possessing a private detective license involves school police officers. Mr. Clader asserts law enforcement officers and probation officers have similar general countywide and/or statewide jurisdiction and powers. Mr. Clader maintains elected constables also have broad jurisdiction. Conversely, Mr. Clader insists his powers as a school police officer are more limited in scope and geographic area. Mr. Clader claims the school district's policy only authorizes him to issue citations for summary offenses and to detain students for misdemeanors and felonies. Mr. Clader states the school district's policy precludes him from making misdemeanor or felony arrests. Mr. Clader admits he has issued citations for summary offenses, but he highlights he has made no arrests for felonies or misdemeanors. Mr. Clader contends he has participated in six or seven misdemeanor/felony investigations, but he turned over each of those cases to the state police. Mr. Clader emphasizes he cannot access criminal history information with the ORI assignment number. Mr. Clader stresses his school police powers are limited in jurisdiction to the school property.

Mr. Clader submits the court's imposition of restrictions on his private detective license was a reasonable remedy and logically related to the facts, such that Mr. Clader cannot conduct his private detective business in the same restricted areas where he has limited police powers. Mr. Clader submits neither the Private Detective Act of 1953 nor the relevant case law prohibits a court from imposing reasonable restrictions on a private detective

license. Mr. Clader concludes the court properly granted his request for a private detective license subject to certain restrictions, and this Court should affirm. For the following reasons, we agree with the Commonwealth's position.

The Private Detective Act of 1953 dictates the procedure to apply for a private detective license and what is required for issuance of a private detective license as follows:

### § 14.  Application for licenses

Any person…intending to conduct a private detective business, the business of investigator, or the business of watch, guard or patrol agency, or the business of a detective agency, and any person…intending to conduct the business of furnishing or supplying information as to the personal character of any person, or as to the character or kind of the business and occupation of any person, partnership, corporation, society, or association, or any person or group of persons, or intending to own, conduct, manage or maintain a bureau or agency for the above mentioned purposes, or, while engaged in other lawful business activities, also intending to engage in any one or more of the activities set forth in subsections (a), (b) and (c) of section two of this act…shall, for each such bureau or agency, and for each and every sub-agency, office and branch office to be owned, conducted, managed or maintained by such person…for the conduct of such business, file, in the office of the clerk of the court of quarter sessions of the county wherein the principal office of such business is located, a written application, duly signed and verified, as follows:

(a) If the applicant is a person, the application shall be signed and verified by such person…. The application shall state the full name, age, residence, present and previous occupations, of each person or individual so signing the same, that he is a citizen of the United States, and shall also specify the name of the city, borough,

township, or incorporated town, stating the street and number if the premises have a street and number, and otherwise such apt description as will reasonably indicate the location thereof, where is to be located the principal place of business, and the bureau, agency, sub-agency, office or branch office for which the license is desired, and such further facts as may be required by the court of quarter sessions, to show the good character, competency and integrity of each person or individual so signing such application. Each person or individual signing such application shall, together with such application, submit to the court of quarter sessions his photograph, in duplicate, in passport size, and also fingerprints of his two hands, recorded in such manner as may be specified by the court of quarter sessions. Before approving such application, it shall be the duty of the court of quarter sessions to compare such fingerprints with fingerprints of criminals now or hereafter filed in the records of the Pennsylvania State Police. Every such applicant shall establish, to the satisfaction of the court of quarter sessions and by at least two duly acknowledged certificates, that such applicant…has been regularly employed as a detective, or shall have been a member of the United States government investigative service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years. Such application shall be approved as to each person or individual so signing the same by not less than five reputable citizens of the community in which such applicant resides or transacts business, or in which it is proposed to own, conduct, manage or maintain the bureau, agency, sub-agency, office or branch office for which the license is desired, each of whom shall certify that he has personally known the said person or individual for a period of at least five years prior to the filing of such application, that he has read such application and believes each of the statements made therein to be true, that such person is honest, of good character, and competent, and not related or connected to the person so certifying by blood or marriage. The certificate of approval shall be signed by such reputable citizens and duly verified and acknowledged by them before an officer authorized to take oaths and acknowledgment of deeds.

22 P.S. § 14(a) (internal footnote omitted).

### § 16. Issuance of licenses; fees; bonds

(a) When the application shall have been examined, and such further inquiry and investigation made as the court of quarter sessions or the district attorney shall deem proper, and when the court of quarter sessions shall be satisfied therefrom of the good character, competency and integrity of such applicant, …and a period of ten days from the date of the filing of the application shall have passed, the court of quarter sessions shall issue and deliver to such applicant a certificate of license to conduct such business, and to own, conduct or maintain a bureau, agency, sub-agency, office or branch office for the conduct of such business on the premises stated in such application, upon the applicant's paying to the court of quarter sessions for each such certificate of license so issued, for the use of the county, a license fee of two hundred dollars ($200), if the applicant be an individual, …and upon the applicant's executing, delivering and filing in the office of the clerk of the court of quarter sessions a corporate bond in the sum of ten thousand dollars ($10,000), conditioned for the faithful and honest conduct of such business by such applicant, which surety bond must be written by a corporate surety company authorized to do business in this Commonwealth as surety, and approved by the court of quarter sessions with respect to its form, manner of execution and sufficiency. The license granted pursuant to this act shall last for a period of two years, but shall be revocable at all times by the court of quarter sessions for cause shown. …

22 P.S. § 16(a).

Pennsylvania case law strongly disapproves of issuing private detective licenses to those in any position of public trust. *In re Kuma K-9 Security, Inc.*, 506 A.2d 445 (Pa.Super. 1986). "In evaluating whether a candidate can properly hold a private detective license, Pennsylvania appellate courts

have looked not only at the potential for abuse that would exist if an official with police powers were to be licensed, but also at the appearance of impropriety." ***In re Millennium Consulting & Associates for a Private Detective License***, 804 A.2d 735, 736 (Pa.Cmwlth. 2002). "The concern is that a public official given authority for the benefit of the public might use that authority for the benefit of private persons." ***Id.*** "Public policy is best served when an individual with police powers is not also granted a private detective license." ***Id.*** Thus, Pennsylvania "[c]ourts have consistently held, based upon public policy, that a person may not be granted a private detective license if simultaneously he would be employed as a public official with police powers." ***Kuma K-9 Security, Inc., supra*** at 448.

Of grave concern is a police officer's access to information not otherwise obtainable by private citizens and other private detectives; the potential for the police officer to use his position to the advantage of his dual role as a private detective creates at least the appearance of a conflict of interest and a potential source of abuse which our courts seek to avoid. ***Id.*** at 449 (requiring private detective firm's "consultant," who was also employed as police captain, to resign and sever all ties with private detective firm in order for firm to retain its private detective license). ***See also Millennium Consulting & Associates, supra*** (holding borough police officers were not entitled to private detective licenses, based on public policy to avoid appearance of conflict of interest; police have access to various

- 12 -

resources to which public does not have access, such as police department files, reports and other non-public databases).

In the case of *In re Stanley*, 201 A.2d 287 (Pa.Super. 1964), this Court similarly held that suspension of a private detective license was warranted for the duration of the licensee's position as an elected constable:

> The court below properly held that, as a matter of public policy, it is incompatible for one vested with the authority of a constable to carry on the business of private detective. …
>
> A constable's authority to execute warrants of arrest, to arrest on sight for breach of the peace, vagrancy and drunkenness, to carry a deadly weapon concealed upon his person and to be present at the polling places in order to keep the peace, is not conferred upon private citizens, including private detectives. To give these powers, conferred upon a duly elected constable for the benefit of the public, to a person licensed to act for private persons, creates the distinct possibility of grave abuses. The public policy against allowing one clothed with such extraordinary authority to act as a private detective for private employers seems obvious. Therefore, the action of the court below in suspending his license during the time when he holds this authority is proper.

*Id.* at 289. *See also Little v. Freeman*, 484 A.2d 873 (Pa.Cmwlth. 1984) (affirming declaratory judgment that appellant's position as Mayor of Borough of Kennett Square created appearance of conflict of interest with appellant's employment as private investigator).

This Court has extended the public policy rationale in this context to probation officers and corrections officers as well:

> In *Stanley* we listed the obvious areas of conflict present in that case, but did not intend that to be a comprehensive

list nor did we mandate that only persons who fall within the precise parameters of **Stanley** would be denied private detective licenses. On the contrary, our concern was that persons holding public office and given extraordinary authority for the benefit of the public might use that authority specifically for the benefit of private persons. Though the authority of a probation officer is not identical to that of a constable, probation officers are vested with powers not allowed private persons. The legislature has delineated the authority of probation officers as follows:

> Probation officers…are hereby declared to be peace officers, and shall have police powers and authority throughout the Commonwealth to arrest with or without warrant, writ, rule or process, any person on probation or parole under the supervision of said court for fail(ure) to report as required by the terms of his probation or parole or for any other violation of his probation or parole.

The Act of August 6, 1963, P.L. 521, s 1, 19 P.S. s 1091.

Lay persons, including private detectives, have no such police powers.

In addition to their statutorily granted powers, probation officers have been permitted to request and examine police records. … Private citizens, however, are not privy to such information. …

**Commonwealth v. Gregg**, 396 A.2d 797, 798 (Pa.Super. 1979) (reversing trial court's order granting private detective licenses to two probation officers) (internal footnote and quotation marks omitted). **See also In re Centeno**, 5 A.3d 1248 (Pa.Super. 2010) (reversing trial court's order granting private detective license to corrections officer; pursuant to statutory authority, corrections officer may exercise powers of peace officer in performance of his duties generally in guarding, protecting, and delivering

inmates, protecting property and interests of county, and capturing and returning inmates who might have escaped; as matter of public policy, persons vested with authority of peace officer by virtue of their public employment, cannot be licensed as private detectives because of obvious potential for abuse and conflict of interest).

These cases make clear that Pennsylvania, as a matter of public policy, prohibits individuals who, by virtue of their public employment status, have powers and authority not commonly held by private citizens, including private detectives, because these individuals might abuse their public power and authority to benefit private persons. *See id.*; *Kuma K-9 Security, Inc., supra*; *Gregg, supra*; *Stanley, supra*. The mere appearance of impropriety or the potential for a conflict of interest is sufficient to warrant the denial of a private detective license. *See Kuma K-9 Security, Inc., supra*; *Stanley, supra*; *Millennium Consulting & Associates, supra*; *Little, supra*. In other words, Pennsylvania law has no precedent for granting a private detective license, with or without restrictions, to someone with any law enforcement powers. *See id.*

The Public School Code of 1949 explains the appointment process for a school police officer and dictates a school police officer's powers and duties, as follows:

**§ 7-778.    School police officers**

(a)    Any school entity or nonpublic school may apply to any judge of the court of common pleas of the county

within which the school entity or nonpublic school is situated to appoint such person or persons as the board of directors of the school entity or administration of the nonpublic school may designate to act as school police officer for said school entity or nonpublic school. The judge, upon such application, may appoint such person, or so many of them as he may deem proper, to be such school police officer and shall note the fact of such appointment to be entered upon the records of the court. The judge may, at the request of the school entity or nonpublic school, grant the school police officer the power to arrest as provided in subsection (c)(2), the authority to issue citations for summary offenses or the authority to detain students until the arrival of local law enforcement, or any combination thereof.

\* \* \*

(c)  Such school police officer so appointed shall severally possess and exercise all the following powers and duties:

(1)  To enforce good order in school buildings, on school buses and on school grounds in their respective school entities or nonpublic schools. For purposes of this clause, the term "school bus" shall include vehicles leased by the school entity or nonpublic school to transport students and vehicles of mass transit used by students to go to and from school when the school police officer is responding to a report of an incident involving a breach of good order or violation of law.

(2)  If authorized by the court, **to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipality wherein the school property is located.**

(3)  If authorized by the court, **to issue summary citations or to detain individuals until local law enforcement is notified.**

24 P.S. § 7-778(a), (c)(1-3) (emphasis added). This statute expressly

confers law enforcement powers on school officers.  ***See id.***

Instantly, on June 27, 2013, the court appointed Mr. Clader as a school police officer for the Wallenpaupack Area School District.  The court's appointment order authorizes Mr. Clader to possess and exercise all powers and duties delineated under Section 7-778(c)(1-3).  Consequently, Mr. Clader has authority to: (1) enforce good order in school buildings, on school buses, and on school grounds in the Wallenpaupack Area School District; (2) exercise the same powers granted to and exercised by the police of the municipality wherein the Wallenpaupack Area School District school property is located; and (3) issue summary citations or detain individuals until local law enforcement is notified.  ***See id.***

While employed as a school police officer in the position of the Director of School Security for the Wallenpaupack Area School District, Mr. Clader filed a petition for a private detective license on January 23, 2014.  The Commonwealth opposed Mr. Clader's petition, on the ground that the issuance of a private detective license to Mr. Clader, because of his law enforcement powers, creates the potential for abuse and poses a conflict of interest.  The court held a hearing on the petition on June 3, 2014.  On June 26, 2014, the court granted Mr. Clader's request for a private detective license subject to the following restrictions:

> This Certificate of License is also issued subject to the limitation that [Mr. Clader], who has previously been appointed as a school police officer for the Wallenpaupack Area School District, shall not engage in any private

- 17 -

> detective business, as defined under the Act, in any matter involving school administrators, teachers, employees, officials, parents or students of the Wallenpaupack Area School District without prior written approval of the [c]ourt and notice thereof to the Pike County District Attorney.

(Order, filed June 26, 2014, at 2).

The record confirms Mr. Clader possesses powers and authority that private citizens and other private detectives do not, due to his employment as the Director of School Security for the Wallenpaupack Area School District. For example, the court authorized Mr. Clader to issue summary citations.[1] **See** 24 P.S. § 7-778(c)(3). Mr. Clader admits he has issued summary citations for offenses occurring on school property. Private citizens have no authority to issue summary citations. **See Commonwealth v. Demor**, 942 A.2d 898 (Pa.Super. 2008) (explaining private citizens have no authority to issue summary citations). Mr. Clader has also participated in the investigation of multiple misdemeanor and felony offenses, and he has express authority to detain students suspected of such offenses pursuant to the objectives set forth in the Wallenpaupack Area School District's School

---

[1] The Public School Code of 1949 and accompanying court order appointing Mr. Clader as a school police officer, also expressly authorizes Mr. Clader to "exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipality wherein the school property is located." 24 P.S. § 7-778(c)(2). Certainly, private citizens have no authority to exercise the same powers as their municipal police. On appeal, Mr. Clader claims neither Palmyra Township, Pike County, nor Drecher Township, Wayne County (where the school buildings of the Wallenpaupack Area School District are located) have municipal police. The record contains no information concerning the municipal police presence (or lack thereof) in the relevant area or the powers and duties of any such officers, now or in the future.

Resource Officer Program. (**See** Petitioner's Exhibit 1, Hearing June 3, 2014, at 1.) Private citizens generally lack authority to detain others for misdemeanor and felony offenses. ***But see Commonwealth v. Corley***, 462 A.2d 1374 (Pa.Super. 1983), *aff'd*, 507 Pa. 540, 491 A.2d 829 (1985) (discussing limited circumstances in which private citizen can make "citizen's arrest"; private citizen can make citizen's arrest only for felonies or misdemeanors which arrestor **personally observes**).

As well, in his role as Director of School Security, Mr. Clader obtained an ORI assignment number, which permits Mr. Clader to access driver's license, registration, and "hot file" (stolen vehicle) information. Mr. Clader uses the ORI assignment number to file non-traffic citations or other documents with the district justice courts. Significantly, the ORI assignment number grants Mr. Clader assess to CLEAN, which is accessible only by duly authorized agencies and contains highly sensitive information. (**See** Petitioner's Exhibit 2, Hearing June 3, 2014, at 1.) Thus, Mr. Clader has access to various documents via CLEAN which private citizens and private detectives do not.

The public policy concern here is that given Mr. Clader's statutorily enumerated powers under 24 P.S. § 7-778(c)(1-3) and authority to access records unavailable to private citizens and other private detectives, Mr. Clader might use his authority to benefit private persons in the course of his private detective business. ***See Centeno, supra***; ***Kuma K-9 Security,***

***Inc., supra***; ***Gregg, supra***; ***Stanley, supra***.  Whether Mr. Clader would actually misuse or abuse his power and authority is immaterial.  The public policy is in place to ensure against even the **appearance** of impropriety or **potential** for a conflict of interest.  ***See Kuma K-9 Security, Inc., supra***; ***Stanley, supra***; ***Millennium Consulting & Associates, supra***; ***Little, supra***.  In light of these circumstances, the trial court erred when it granted Mr. Clader's petition for a private detective license.[2]

Further, no provision in the Private Detective Act of 1953 permits the trial court to issue a private detective license and then impose restrictions on the license.  ***See*** 22 P.S. § 11, *et seq*.; 1 Pa.C.S.A. § 1921(b) (stating: "When the words of a statute are clear and free from all ambiguity, the letter

---

[2] The fact that Mr. Clader's authority under Section 7-778(c) is limited to the "jurisdiction" of school property does not alter our position.  The crux of the public policy concern is the applicant's ability to use and abuse power and authority granted to him by virtue of his public employment, which private citizens and private detectives lack—not the geographic scope of where that authority reaches.  ***See Centeno, supra***; ***Kuma K-9 Security, Inc.***; ***Gregg, supra***; ***Stanley, supra***.

Additionally, ***Commonwealth v. Williams***, 749 A.2d 957 (Pa.Super. 2000), *appeal denied*, 564 Pa. 710, 764 A.2d 1069 (2001), on which Mr. Clader heavily relies, is not dispositive here.  In ***Williams***, this Court vacated a trial court's order denying a suppression motion because school police officers acted without statutory authority when they opened the defendant/student's vehicle parked on a city street **off school property**, searched its interior, and seized guns from the vehicle.  ***Williams*** did not involve an application for a private detective license and stands only for the legal proposition that a school police officer's authority under Section 7-778 is limited in jurisdiction to the places specifically delineated under that statute.  Because the school police officers in ***Williams*** were not in a school building, on a school bus, or on school grounds when they conducted the search and seizure, this Court decided the trial court erred in concluding that the officers had acted within their statutory authority.  ***Williams, supra*** at 961, 963.

of it is not to be disregarded under the pretext of pursuing its spirit"); ***Williams, supra*** at 962 (stating: "[A]s a court, we may not disregard the letter of the statute in favor of fostering gun-free areas surrounding school grounds, since to do so amounts to an exercise of judicial legislation by reading something into the statute that is not there"). Moreover, imposing restrictions on Mr. Clader's private detective license does not alleviate the **appearance** of impropriety or a conflict of interest. The court's action also raises a question concerning the difficulty inherent in enforcing those restrictions, absent blatant abuse. ***See Little, supra*** (holding that notwithstanding appellant's vow that neither he, nor any other employee under license of his employer's private detective firm, would conduct private detective business in Borough of Kennett Square, appellant's position as Mayor of that borough creates at least appearance of conflict of interest; appellant's vow to restrict his private detective business does not suffice to remove appearance of conflict of interest; potential for abuse arising from appellant's access to records not ordinarily available to private detectives, as well as arising from his limited police powers, creates appearance of impropriety constituting conflict of interest). Therefore, the trial court erred when it granted Mr. Clader's petition for a private detective license, even with the imposition of certain restrictions. Accordingly, we reverse.

Order reversed.

President Judge Emeritus Bender, Judge Bowes, Judge Shogan, Judge Lazarus, Judge Stabile and Judge Jenkins join this opinion.

Judge Ott files a dissenting opinion in which Judge Panella joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2016