491 A.2d 829

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William N. CORLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1984.

Decided April 23, 1985.

542

---

L. Carter Anderson, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., for appellee.

John A. Fitzpatrick, Philadelphia, for Penjerdel Retail Council, et al, amici curiae.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

We review an Opinion and Order of the Superior Court affirming the denial of post-conviction relief to the Appellant William N. Corley. The essence of the Appellant's argument is that his trial counsel was ineffective for having withdrawn an allegedly meritorious suppression motion. The lower court found, and Superior Court agreed, that because the suppression motion would properly have been denied, counsel could not be found ineffective for having withdrawn it. The issues raised by the motion would have been, (1) whether the exclusionary rule applies in the context of a "citizen's arrest", and, if so, (2) whether the arrest of the Appellant in this case was illegal, there not having been a felony committed in the presence of the arresting person. The Superior Court held "that the fruits of an illegal citizen's arrest are subject to the full action of the Fourth Amendment and to the exclusionary rule," *Commonwealth v. Corley*, 316 Pa.Super. 327, 335, 462 A.2d 1374, 1378 (1983), but determined that on the facts of this case the arrest was not illegal. This finding was based on the court's holding that "a citizen's arrest can be made for a breach of the peace that is personally observed by the arrestor." *Id.*, 316 Pa.Super. at 338, 462 A.2d at 1379. The Superior Court acknowledged that this holding was contrary to *dicta* found in several previous cases, but there being no binding precedential authority on point, the court, in the common law tradition, reasoned that the rule permitting individuals to arrest for felonies committed in their presence should be extended to permit arrests for breaches of the peace as well. We granted allowance of appeal to review these holdings. While rejecting that court's conclu-

sions as to the applicability of the exclusionary rule in the present context, we agree that the Appellant is not entitled to relief under the Post-Conviction Hearing Act, 42 Pa.C.S. § 9541 et seq., and therefore affirm.

The criminal incident giving rise to this case was a shooting and robbery which occurred in the men's room of the Strawbridge and Clothier department store in Philadelphia on May 22, 1976. A store security guard saw the Appellant running toward the main escalator and also heard over his radio that there had been a shooting. The guard followed the Appellant out of the store, across the street, and into Gimbel's department store. As he followed, he observed the Appellant put a gun in his jacket pocket. The Strawbridge guard detained the Appellant and removed his jacket. He then handcuffed the Appellant and took him to a detention room in the Strawbridge store. While there he removed the gun from the jacket pocket. A wallet with which the Appellant had attempted to establish his identity, later identified as belonging to the victim, was also removed but was returned to the Appellant as he was turned over to the Philadelphia police. This wallet was later found, partially obscured between the backrest and rear seat of a patrol car in which the Appellant had been seated, by an officer who noticed that the Appellant no longer had the wallet when he was taken into the station.

Following a plea of guilty and withdrawal of the plea, the Appellant was tried non-jury and found guilty of robbery, various weapons offenses, and assault. On direct appeal the Superior Court affirmed the judgment of sentence. *Commonwealth v. Corley*, 266 Pa.Super. 617, 405 A.2d 541 (1979). The Appellant filed the Post-Conviction Hearing Act petition which gives rise to the present case in November of 1979, seeking to be discharged or granted a new trial on the basis that he was denied his constitutional right to assistance of competent counsel, 42 Pa.C.S. § 9543(3)(vi). After hearings the lower court denied the petition and, as previously noted, the denial of relief was affirmed.

The Appellant asserts the correctness of the Superior Court's determination that the exclusionary rule is applicable in the context of a "citizen's arrest", but argues error in the court's holding empowering individuals to arrest for misdemeanors committed in their presence. This rule, according to Appellant, departs from the longstanding rule that a citizen may properly make an arrest only when he has definite knowledge that a felony has been committed, and reasonable grounds to conclude that the defendant committed it, *see, Commonwealth v. Chermansky*, 430 Pa. 170, 242 A.2d 237 (1968); *Commonwealth ex rel. Garrison v. Burke*, 378 Pa. 344, 106 A.2d 587 (1954). Moreover, Appellant argues, contrary to the Superior Court's reasoning that citizens should be encouraged to stop breaches of the peace and should not be required to distinguish between those which are felonies and those which are not, the new rule sanctions vigilantism and requires a more difficult distinction to be made by the citizen arrestor, that between breaches of the peace which are misdemeanors and those which are summary offenses. The latter, Superior Court has indicated, may not be the basis of a citizen's arrest. *Commonwealth v. Stahl*, 296 Pa.Super. 507, 442 A.2d 1166 (1982).

The Appellee, in response, argues that the Superior Court erred in holding that evidence obtained as a result of an illegal citizen's arrest should be suppressed. As a consequence of this error, Appellee continues, the Superior Court unnecessarily addressed the question of a private individual's authority to arrest for a non-felony committed in his presence. It is suggested that this Court likewise need not address the merits of this issue.

The Superior Court prefaced its analysis by acknowledging the long-established principle that the fruits of an illegal search by an individual not acting for the state are not subject to exclusion by reasons of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). At the core of

the reasoning underlying this refusal to extend application of the exclusionary rule to private searches is the concept of "state action", the understanding that the Fourth Amendment operates only in the context of the relationship between the citizen and the state. Although this Court has never ruled that the same result necessarily obtains under Article I, Section 8 of the Pennsylvania Constitution, the Superior Court has so held, *Commonwealth v. Dingfelt*, 227 Pa.Super. 380, 323 A.2d 145 (1974), and we have implicitly acknowledged the force of the argument, distinguishing cases in which we have applied the exclusionary rule by emphasizing the extensive police involvement in the search. *See e.g., Commonwealth v. Eshelman*, 477 Pa. 93, 383 A.2d 838 (1978).

In the present case the Superior Court differentiated between a private individual conducting a search and one making a citizen's arrest. The former, the court observed, can have purely personal motives and goals for undertaking a search. The latter, according to the court, "is, definitionally, acting under the authority of the state." 316 Pa.Super. at 333, 462 A.2d at 1377. This because "through the common law tradition as interpreted and modified by the courts of this Commonwealth," *Id.* n. 9, the state recognizes and sanctions the act, distinguishing it from an unprivileged battery or kidnapping. In addition the police, by taking the arrestee into custody, and the prosecutor, by seeking to use evidence gained as a result of the arrest, would have "ratified" the citizen's arrest. "Since the very occurrence of the act is freighted with the authority of the state," concluded the Superior Court, "if that act is committed improperly, the fruits of that arrest must be suppressed." 316 Pa.Super. at 333, 462 A.2d at 1377.

■ Upon examination, the Superior Court's distinction between private searches and citizen's arrests proves to be too facile because it is based upon a misinterpretation of the concept of state action. We first note that the theory described by the court whereby "ratification" of an individual's actions by police and prosecutors may support an

inference of state action would, even if correct, apply to both searches and citizen's arrests. It cannot, therefore, be a basis for distinguishing between the two. Nor do we agree that the acts of an individual become imbued with the character of "state action" merely because they are in turn relied upon and used by the state in furtherance of state objectives. *Commonwealth v. Eshelman*, relied on by the Superior Court in support of this interpretation of "ratification", is not to the contrary. In that case we specifically found that the searcher was, despite being off-duty, *"acting as a police officer* when he removed the package and turned it over to police." 477 Pa. at 101, 383 A.2d at 842. (Emphasis added). We further observed that this finding was supported by evidence that the police treated the searcher as a police officer, arranging for him to take the evidence to the state police for investigation. It was in this sense that the acts of the individual were "ratified" by the Commonwealth and the searcher was understood to be acting on behalf of the state. The mere use by police and prosecutors of the results of an individual's actions does not serve to "ratify" those actions as conduct of the state.

Second, we find that the Superior Court "short-circuited" the tests for determining state action set out by the United States Supreme Court and as a result reached a finding of state action which was inappropriate. In the context of an action under 42 U.S.C. § 1983, the Supreme Court equated the statutory requirement that the violation alleged be "under color of" state law with the constitutional requirement of the Fourteenth Amendment that there be "state action." The Court stated that

[its] cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the state. These cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be

because ... his conduct is otherwise chargeable to the state.

*Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). In a case more nearly like the present case, the Court identified the critical factor as whether the private individual "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state...." *Coolidge v. New Hampshire,* 403 U.S. at 487, 91 S.Ct. at 2049.

■■■ Although the Superior Court had no difficulty concluding that the conditions prescribed by *Lugar* were met here, we are not so persuaded. For purposes of argument it may be conceded that the first part of the *Lugar* test is fulfilled. Where an individual, because of a privilege defined by the law of the state, is not subjected to civil or criminal liability for the otherwise actionable detention of another person, it can fairly be concluded that the "deprivation" suffered by the detainee is "caused by the exercise of some right or privilege created by the state." There are, however, two parts to the *Lugar* approach to determining whether conduct may be attributed to the state, both of which must be established. The Supreme Court itself observed that "[a]lthough related these two principles are not the same. They collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the state to his decisions.... *The two principles diverge when the constitutional claim is directed against a party without such apparent authority, i.e., against a private party.*" 457 U.S. at 937, 102 S.Ct. at 2754. (Emphasis added). Focusing on the second factor, "that 'something more' which would convert the private party into a state actor," 457 U.S. at 939, 102 S.Ct. at 2755, the Court illustrated several "tests" which had been articulated, all in the context of civil rights actions: the "public function" test, see *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ("private" political organization serving public function in election process) (plurality opinion); the "state com-

pulsion" test, see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (restaurant owner discriminating on basis of race under compulsion of state law or custom having force of law); the "nexus" test, see *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (restaurant practicing racial discrimination leased space from state parking authority); and the "joint action" test, see *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (private party's joint participation with state official in prejudgment attachment of property).

■ We do not have the benefit of the reasoning which convinced the lower court that both principles of the *Lugar* approach were present here. It is clear, however, that this is a case where the two principles diverge because the person conducting the search was a private party. The sole connection between the conduct of the security guard in this case and state law is the privilege which if properly established might shield him from liability for false arrest/false imprisonment. Having rejected the broad sweep of the ratification theory propounded by the Superior Court, we find no basis on which it might be said that the private party may be said to be a "state actor" whose conduct is *"otherwise* chargeable to the state."

■ Likewise, we do not find sufficient evidence to justify the conclusion that under the principle set out in *Coolidge* the security guard "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state...." That the "instrument or agent" test involves more than the fact that the private individual cooperated with state officials was made clear by the Court when it stated

> there is nothing constitutionally suspect in the existence, without more, of ... incentives to ... active cooperation with the police. The exclusionary rules were fashioned "to prevent, not to repair," *and their target is official misconduct.... But it is no part of the policy underlying the Fourth and Fourteenth Amendments to dis-*

*courage citizens from aiding to the utmost of their ability in the apprehension of criminals.*

*Coolidge v. New Hampshire,* 403 U.S. at 488, 91 S.Ct. at 2049. (Emphasis added).

 The concept of citizen's arrest as it has been developed by the courts is almost exclusively used as defense or justification on the part of the arresting person. In tort law the citizen's arrest is defined as a privilege that prevents an intentional invasion of another person's interests, which otherwise would constitute assault, battery, and false imprisonment, from being tortious and, therefore, the basis for civil liability. The conditions required to establish the privilege, generally stated, are that a felony has been committed and that the actor reasonably suspects that the person whom he arrests has committed the felony. *See Mahaffey v. Byers,* 151 Pa. 92, 25 A. 93 (1892); *see generally* Restatement (Second) of Torts, §§ 118, 119, 127.

In the criminal field, the rule has also been stated "in defense of" the actions of the arresting person where reduction of charges from murder to manslaughter, on the basis of justification, was denied because the decedent was privileged to engage in the offensive conduct which, absent the privilege, might have justified the defendant in using force to evade the illegal arrest. *Commonwealth v. Grether,* 204 Pa. 203, 53 A. 753 (1902); *Brooks v. Commonwealth,* 61 Pa. 352 (1869).

The rule has also been restated in the criminal context in *habeas corpus* cases, generally in the situation of a prisoner seeking discharge on the grounds that his arrest was illegal for not having been based on a warrant. The Court, stating the rule to refute the contention that a warrant was necessary in all cases, found the arrests in those cases to be proper. *See e.g., Commonwealth ex rel. Garrison v. Burke,* 378 Pa. 344, 106 A.2d 587 (1954); *Commonwealth ex rel. Bandi v. Ashe,* 367 Pa. 234, 80 A.2d 62 (1951); *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 71 A.2d 799 (1950). We are directed to no case, and our independent research has found none, in which this Court

has discharged a defendant based upon the failure of a citizen's arrest to meet all the criteria necessary for such an arrest to be valid. Indeed, such a finding would have been unavailing in the *habeas corpus* cases because of the Court's rulings that such matters were inappropriate grounds for granting that extraordinary remedy. *See e.g.,* *Spencer,* 364 Pa. at 445, 71 A.2d 801.

■ We have thoroughly examined the cases detailing the legal theory of citizen's arrest. We find that, on the whole, it has operated historically as no more than an "incentive to active co-operation with the police," with corollary civil remedies for its improper use. Because the exclusionary rule is designed "to prevent, not to repair" and is aimed at "official misconduct", it would be a wholly improper extension to apply it here, as a remedy for private conduct. The holding of the Superior Court to the contrary is, therefore, reversed. As a consequence of our decision on the merits of this issue, the Appellant's argument that his trial counsel provided him with ineffective representation must fail. Because the suppression motion would properly have been denied, counsel's actions in withdrawing it cannot constitute ineffective assistance.

Because of our determination that the exclusionary rule does not apply to citizen's arrests, we need not address the propriety of the Superior Court's holding that a citizen may arrest for a misdemeanor breach of the peace committed in his presence. We leave that question for determination by the legislature or the court in an appropriate civil case.

The Order of the Superior Court is affirmed.

LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and PAPADAKOS, JJ., join in this majority opinion.

LARSEN, J., filed a concurring opinion in which McDER-MOTT and HUTCHINSON, JJ., joined.

NIX, C.J., concurred in the result.

LARSEN, Justice, concurring.

I join in the majority opinion. Appellant's trial counsel was not ineffective in withdrawing the suppression motion because pursuit of that motion would have been frivolous.

I write separately to stress to the bench and bar that the *automatic* application of the rule of exclusion of evidence, as the remedy for real or imagined trangressions of a defendant's right to be free from unreasonable searches, seizures and arrests, is inappropriate. *See e.g., Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985) ("we reject the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants.") *Compare Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983) *with Commonwealth v. Chandler,* 505 Pa. 113, 477 A.2d 851 (1984).

The Superior Court held in the instant case:

as a matter of federal constitutional law, that the fruits of an illegal citizen's arrest are subject to the full action of the Fourth Amendment and to the exclusionary rule. On separate, independent and adequate state grounds, applying Article I, Section 8 of the Constitution of this Commonwealth, we hold that the same results also obtain.

316 Pa.Super. 327, 462 A.2d 1374, 1378 (1983). That holding is obviously based on a fundamental misunderstanding of the origin of the often controversial exclusionary rule and of the evils which that rule was intended to guard against. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Both the United States Supreme Court and this Court have made it clear that the exclusionary rule will *not* be extended to areas where its application would not tend to achieve its primary purpose of deterring unlawful police conduct. *See e.g., United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49

L.Ed.2d 1046 (1976); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Leon,* 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. ——, ——, 104 S.Ct. 3424, 3428, 82 L.Ed.2d 737, 743 (1984); *Commonwealth v. Mason, supra; Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979); *see generally Commonwealth v. DeJohn,* 486 Pa. 32, 53–73, 403 A.2d 1283, 1293–1304 (1979) (Larsen, J., concurring in part and dissenting in part).

Even assuming that a citizen's arrest was unlawful, *neither* the prosecution of the "arrestee" by the Commonwealth, *nor* the use at trial of evidence obtained as a result of such an arrest, *nor* the recognition by the Commonwealth of a qualified privilege as a defense in a tort action for false arrest, false imprisonment, assault and battery, etc., present the sort of official misconduct by law enforcement officials that the exclusionary rule was created to deter.

McDERMOTT and HUTCHINSON, JJ., join in this concurring opinion.