2018 PA Super 124

IN THE INTEREST OF: N.B., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
APPEAL OF: COMMONWEALTH OF :
PENNSYLVANIA :
:
:
: No. 527 WDA 2016

Appeal from the Order Dated March 11, 2016
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-JV-0000063-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J.,
LAZARUS, J., OLSON, J., OTT, J., STABILE, J., and DUBOW, J.

DISSENTING OPINION BY LAZARUS, J.: FILED MAY 10, 2018

I respectfully dissent because I do not believe the record supports the

Majority's determination that Appellee was incapable of attaching meaningful

significance to his Miranda warnings. Furthermore, I disagree with the

Majority's determination that Mother, in light of her directive that Appellee tell

the truth to law enforcement, was not an "interested adult." Lastly, I disagree

that said directive constituted state action or was dispositive in determining

whether Appellee's Miranda waiver was voluntary.

With regard to a juvenile waiving his Miranda rights, I preliminarily

note, "[r]egardless of whether a waiver of Miranda is voluntary, the

Commonwealth must prove by a preponderance of the evidence that the

waiver is also knowing and intelligent." In re V.C., 66 A.3d 341, 351 (Pa.

Super. 2013), quoting Commonwealth v. Knox, 50 A.3d 732, 746-47 (Pa.

Super. 2012) (emphasis in original). For a juvenile to waive the effectuation of the rights contained in a Miranda warning, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Id. Additionally, a juvenile must waive the right with a full awareness both of the nature of the right he abandons and the consequences of the decision to abandon it. Id. "Only if the totality of the circumstances surrounding the interrogation reveals both an un-coerced choice and the requisite level of comprehension may a court properly conclude that a juvenile has waived his Miranda rights." Id., quoting Knox, 50 A.3d at 746-47.

Instantly, my review of the record and subsequent application of the totality of the circumstances test supports the following determinations: (1) Mother, at the time of Appellee's interrogation, was an "interested adult" with Appellee's interests and welfare at heart; (2) the Commonwealth established its burden of showing Appellee voluntarily, knowingly and intelligently waived his Miranda rights; and (3) Mother's directive that Appellee tell the truth to law enforcement does not constitute state action implicating Miranda.

First, the totality of circumstances test, as it relates to a valid Miranda waiver for a juvenile, requires us to consider, among other factors, Appellee's "youth, experience, comprehension, and the presence or absence of an interested adult." In re N.M., 141 A.3d 539, 544 (Pa. Super. 2016)

(emphasis added).[1]  "An interested adult has been defined by our Supreme Court as 'one who is genuinely interested in the welfare of the accused juvenile . . . and who has been informed and is aware of those [F]ifth and [S]ixth [A]mendment rights guaranteed to the juvenile.'"  Commonwealth v. Satchell, 452 A.2d 768, 770 (Pa. Super. 1982).  A parent, for purposes of waiving a juvenile's Miranda rights, may act as an interested adult even where the parent is upset and/or distressed at the prospect that his or her child participated in a serious crime.  See In re V.C., 66 A.3d 341, 352 (Pa. Super. 2013).

Here, Mother was present for the reading of Appellee's Miranda rights and preliminary questioning prior to Appellee's approximately ten-to-twenty-minute one-on-one interview with Lieutenant Caskey.  During Appellee's suppression hearing, Mother testified as follows:

COMMONWEALTH: Okay. Do you recall whether or not you were read the Miranda [w]arnings with you and both boys present?

MOTHER: Yes, we were.

Q: At some point, were you asked to step out of the office?

A: Yes.

Q: In other words, did Lieutenant Caskey ask to speak to the boys individually?

_____

[1] We acknowledge, however, that "the per se requirement of the presence of an interested adult during a police interview of a juvenile is no longer required."  Knox, 50 A.3d at 746-47 (citation omitted).  The presence of an interested adult during an interview is simply one factor in determining the voluntariness of a juvenile's waiver of his Miranda rights.  Id.

A: Yes.

Q: Were you okay with that in stepping out of the office.  Were you agreeable with that?

A: Yes.

Q: Did you understand that you had a right to be in there if you wanted to?  Was that explained to you by Lieutenant Caskey?

A: Yes.

Q: And do you recall approximately how long . . . the boys spoke with Lieutenant Caskey?

A: Ten, fifteen minutes.

Q: Okay.  And where were you at [sic] when . . . they were being questioned just outside of that door?

A: Just outside the office.

Q: And just so we[] [are] clear, was that door ever locked or was it open[?]

A: It was closed[.]

Q: But it was[] [not] locked to your knowledge?

A: No.

N.T. Suppression Hearing, 2/17/16, at 85-86 (emphasis added).

As the foregoing exchange indicates, Mother understood Appellee's Miranda rights and her right to be present during Appellee's interview. Satchell, supra.  Additionally, Mother's decision to report Appellee's behavior to school officials and law enforcement, coupled with her directive that

Appellee tell the truth, is as indicative of concern as it is of disinterest.[2]  In re V.C., supra; Cf. Commonwealth v. Laudenberger, 715 A2d 1156, 1159 (Pa. Super. 1998) (juvenile validly waived his Miranda rights, even if mother who met with juvenile prior to waiver was angry with juvenile and only met with juvenile for a few minutes; fact that mother was angry was as indicative of concern as it was of disinterest).

In my opinion, the totality of the circumstances weighs in favor of finding that Mother was an "interested adult."  The Majority's conclusion does not comport with relevant case law defining who is an "interested adult" for purposes of juvenile interrogations.  There is no requirement, as the Majority

_____

[2] At Appellee's suppression hearing, counsel argued that Mother could not be an interested adult because she was the reporting source of Appellee's alleged crimes.  I disagree.

One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children.  In re J.B., 39 A.3d 421, 426-27 (Pa. Super. 2012).  Additionally, the purpose of juvenile delinquency proceedings is to seek treatment, reformation and rehabilitation, and not to punish.  Id.  Upon learning that a "sexual incident" occurred between Appellee and the alleged victim, Mother contacted school officials "seek[ing] some kind of guidance" regarding how to handle Appellee's behavior.  N.T. Suppression Hearing, 2/17/16, at 10.

In reporting Appellee's behavior to his school, Mother was simply contemplating the best interests and welfare of her son.  Satchell, supra; In re V.C., supra.  Her intent was clearly distinct from that of a reporting parent or familial adult who was the victim of a juvenile's actions.  Moreover, Mother "didn't know the details" of Appellee's alleged actions at the time she reported his behavior to his school and she did not provide a statement to police, and thus, did not, or could not, inculpate Appellee to the police.  N.T. Suppression Hearing, 2/17/16, at 9.  The record clearly indicates that Mother's intent was to explore the means by which she could help Appellee avoid similar conduct in the future, which draws parallels with the goals of the Juvenile Act.

implies, that an interested adult vigorously persuade a juvenile to exercise the protections afforded by the Fifth and Sixth Amendments.

Second, I believe that the Commonwealth met its burden of establishing that Appellee knowingly, voluntarily and intelligently waived his Miranda rights, even in light of his alleged intellectual challenges.

"[I]t is the Commonwealth's burden to establish whether a defendant knowingly and voluntarily waived his Miranda rights." Commonwealth v. Cohen, 53 A3d 882, 885-86 (Pa. Super. 2012) (brackets and citations omitted). "In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." Id. at 886.

Appellee's interview took place at a police station inside of an office. Lieutenant Caskey, who was wearing a police uniform, maintained a rational, calm demeanor during the duration of the interview; he did not yell at or threaten Appellee. Trial Court Opinion, 3/14/16, at 2-3. Prior to Appellee's interview, Lieutenant Caskey read Miranda warnings to him, his brother and Mother; all three verbally assented to answering Lieutenant Caskey's questions. Lieutenant Caskey explained to Mother, in the presence of Appellee, her right to be present during the interview, but that he preferred to interview Appellee alone.[3] Lieutenant Caskey also informed Mother that

_____

[3] Lieutenant Caskey indicated that, given the nature of the allegations, he "believed that [Appellee] would be more forthcoming without . . . the

the interview could result in the Commonwealth bringing charges against Appellee.  Mother had many opportunities to confer with Appellee before his one-on-one interview with Lieutenant Caskey, and Lieutenant Caskey did not bar her from returning to the office at any time.  Lieutenant Caskey did not lock the office door.  Appellee, at no point during his individual interview, asked to end the interview or to confer with his Mother or an attorney.

Additionally, there was no indication from Appellee or Mother that he was not aware of his surroundings or that he did not understand what was occurring.  Appellee, who was fourteen years of age at the time of the interview, had a normal physical appearance and was responsive to Lieutenant Caskey during the interview.  Appellee did not appear to be under the influence of any substance that would alter his responses or otherwise inhibit his understanding of the situation.  Furthermore, Mother never raised a concern regarding Appellee's alleged intellectual challenges and/or developmental delay.[4]

_____

embarrassment of the mother being in the room."  N.T. Suppression Hearing, 2/17/16, at 44.  Appellee corroborated Lieutenant Caskey's account when he stated at his suppression hearing that he "was embarrassed to talk about [the incident] in front of [his] mother."  Id.

[4] The Majority's repeated use of the term "developmental delay" is, apparently, a colloquialism.  Establishment of developmental delay, or Global Developmental Delay ("GDD"), requires a formal clinical diagnosis.  According to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"), a diagnosis of GDD "pertains to children who are unable to meet developmental targets in a number of areas of intellectual performance but who are not capable or too young to take part in methodical/standardized

At Appellee's suppression hearing, he and Mother testified that his intellectual challenges prevented him from knowingly and voluntarily waiving his Miranda rights. However, the only evidence in the record suggesting Appellee suffers intellectual challenges is said testimony. Appellee did not present documentation that he had an Individualized Education Plan ("IEP") at school, testimony from an expert that had evaluated Appellee (e.g., school counselor, psychiatrist, etc.), documentation evidencing a formal diagnosis of developmental delay or other clinical diagnoses, and/or any other evidence establishing that Appellee is intellectual challenged. In fact, when asked about the subject at Appellee's suppression hearing, Mother conceded that Appellee had not been formally diagnosed with any intellectual or psychological impairments:

> COMMONWEALTH: Does [Appellee] have any issues you are aware of in terms of learning, mental health issues, anything of that nature?
>
> MOTHER: Yes.
>
> COMMONWEALTH: [W]hat kind of issues does [Appellee] have in terms of learning?
>
> MOTHER: I would[] [not] know the exact terms for them. He[] [is] still in the process of evaluations and being diagnosed, and he's just always – he's always struggled. He's basically been behind.

---

evaluations of intellectual functioning. This diagnosis involves reconsideration following a phase of time." Global Developmental Delay DSM-5 315.8 (F88), Helen Okoye, MD, MBA, MS-Epi, https://www.theravive.com/therapedia/glob al-developmental-delay-dsm%C2%AD--5-315.8-(f88) (last visited 4/11/18).

N.T. Suppression Hearing, 2/17/16, at 20 (emphasis added). Instantly, the only evidence of record that Appellee suffers intellectual challenges that render him incapable of understanding his Miranda rights is his and Mother's testimony.

Assuming Appellee is in fact "intellectually challenged," the Majority takes the position, which is unsupported by the record, that such challenges are determinative of an unknowing waiver of his Miranda rights. The majority's determination is inconsistent with our Supreme Court's refusal to adopt a per se rule of inability to waive constitutional rights based solely on mental and physical deficiency. Commonwealth v. Johnson, 354 A.2d 886 (Pa. 1976). Specifically, the majority ignores that even a person of below average mental ability may knowingly and intelligently waive a constitutional right. Commonwealth v. Abrams, 278 A.2d 902, 905 (Pa. 1971). Rather, the Majority adopts a post hoc determination that Appellee's waiver of his Miranda rights, relinquished in the presence of an interested adult, was somehow unknowing. I disagree.

Lastly, the trial court stated that the factor that weighed most heavily in determining that suppression was necessary was Appellee's "own testimony that he believed he was forced to be there by his mother and that he was directed to confess." Trial Court Opinion, 6/1/16, at 4-5. In fact, the trial court "found this factor to be the one that skewed the totality of the circumstances in favor of suppression." However, the fact that Mother

encouraged Appellee to confess is of no consequence, as Mother's plea that Appellee tell the truth did not constitute state action.

Under relatively rare circumstances, the actions of private citizens may be impliedly ratified with the authority of the state. See Commonwealth v. Eshelman, 383 A.2d 838 (Pa. 1978). Even so, the mere use by police and/or prosecutors of the results of an individual's actions does not per se serve to "ratify" those actions as conduct of the state. The test by which we determine whether an action was "under the color" of state law is well settled:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state[.] . . . Second, the party charged with deprivation must be a person who may fairly be said to be a state actor. This may be because . . . his conduct is otherwise chargeable to the state.

Commonwealth v. Corley, 491 A.2d 829, 832 (Pa. 1985), quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). A critical factor in determining whether an individual is acting under the color of state law is whether "in light of all the circumstances of the case, [the private individual] must be regarded as having acted as an 'instrument' or agent of the state." Corley, 491 A.2d at 832, quoting Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971).

Mother, acting as an interested adult, sought to counsel her son in the utility of honesty and justice. There is no indication in the record that her decision to do so was compelled, coopted or ratified by a state actor (e.g., Lieutenant Caskey). Accordingly, where, as here, Mother simply encouraged Appellee to "tell the truth," we may not implicate the constitutional protections

that ordinarily attach when an individual is interrogated by a law enforcement officer or other state actor.[5]  In fact, Mother stated that it was only after Appellee's interview with Lieutenant Caskey and the subsequent filing of charges that she reconsidered her decision to allow Appellee to cooperate with the authorities.  Mother's hindsight in no way diminishes that she initially sought to cooperate with authorities in order to further the interests and welfare of Appellee.

In light of the foregoing, I would reverse the order suppressing Appellee's statement.

President Judge Gantman, President Judge Emeritus Bender, and Judge Shogan join this Dissenting Opinion.

_____

[5] Even assuming Mother were a state actor, the record does not support a finding that her directive that Appellee "tell the truth" amounts to intimidation, coercion or deception that would invalidate the voluntariness of Appellee's confession.  Knox, supra.  Simply encouraging a juvenile to tell the truth comports with the basic purpose of conducting an interview, and truthfulness is a fundamental tenet of the juvenile justice system.  A full understanding of the underlying facts of a particular case is integral to treating and rehabilitating a juvenile.  In re J.B., supra.