J-S20029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL CASTILLO PENA | : | |
| | : | |
| Appellant | : | No. 1489 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 17, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001623-2019

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:      **FILED: JULY 24, 2024**

Joel Castillo Pena appeals from the judgment of sentence entered after a jury found him guilty of two counts of persons not to possess firearms.[1] Pena challenges the order denying his motion to suppress two handguns that a hospital security officer found in his bag.  We affirm.

Pena was charged with firearm and other offenses based on an incident on November 25, 2018.  On September 27, 2019, Pena moved to suppress evidence.  The suppression court heard Pena's motion on August 28, 2020.

The suppression court found the following facts:

1. On November 25, 2018, Patrol Officer Nicholas Davi of the Hazleton City Police Department was called to the CVS Pharmacy located at 1000 North Church Street, Hazleton as a

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

result of a report that a black male was under the influence of drugs and acting disorderly.

2. Patrol Officer Davi arrived at the CVS Pharmacy along with several other Hazleton City Patrol Officers and recognized [Pena] from previous encounters.

3. [Pena] was requesting Narcan due to his condition so Patrolman Davi had an ambulance dispatched to the scene.

4. An ambulance arrived and [Pena] was transported to the Lehigh Valley Hazleton Hospital for treatment.

5. Patrolman Davi arrived at the Lehigh Valley Hazleton Hospital with two other Hazleton City Patrol Officers and observed [Pena's] refusal of treatment as well as his ongoing disorderly behavior.

6. [Pena] was restrained and eventually sedated as a result of his behavior.[2]

7. Prior to [Pena's] arrival, Lehigh Valley Hazleton Hospital Security … Officer Brian Cooper was notified that a patient would be arriving at the hospital due to a drug related incident and security would be needed.

8. Lehigh Valley Hazleton Hospital employed Brian Cooper as a private security officer.

9. Security Officer Cooper was familiar with [Pena] because of prior contacts with him.

10. Security Officer Cooper also observed [Pena] to be non-compliant with hospital personnel which resulted in his restraint and sedation.

11. After [Pena] was sedated and in a treatment room, Security Officer Cooper conducted a search of [Pena's] jacket and brief case[3] pursuant to the Lehigh Valley Health Network policy.

---

[2] Officer Davi testified at the suppression hearing that the decisions to restrain and sedate Pena were made by the hospital, not the police.  N.T., Suppression Hearing, 8/28/20, at 29.

[3] There was some dispute whether this item was a briefcase or a backpack. The difference is immaterial to the legal issues in this case.

12. Because Security Officer Cooper was unable to obtain consent from [Pena], he moved [Pena's] jacket and brief case to the nurses' station and conducted a search based upon his reasonable suspicion that [Pena] was in possession of items that may be considered dangerous as provided in the Policy Statement, Section 1.

13. Reasonable suspicion was based on [Pena's] continued attempts to gain access to his jacket and brief case.

14. While searching [Pena's] jacket, Security Officer Cooper located a holster.

15. While searching [Pena's] brief case, Security Officer Cooper located a handgun and he advised Hazleton City Patrolman Christopher Zubris of its presence.

16. Security Officer Cooper then located a second handgun in [Pena's] brief case.

17. Patrolman Zubris took possession of both handguns after they were found by Security Officer Cooper.

18. No one, including but not limited to any Hazleton City Patrol Officer, told, ordered, requested, directed or in any way encouraged Security Officer Cooper to search [Pena's] jacket and brief case.

19. No Hazleton City Patrol Officers were present at the time Security Officer Cooper began searching [Pena's] jacket and brief case since [the police officers] were in the treatment room with [Pena] and the search occurred at the nurses' station.

…

21. Hazleton City Patrol Officer Nicholas Davi and Lehigh Valley Hazleton Security Officer Brian Cooper provided credible testimony at the suppression hearing held on August 28, 2020.

Findings of Fact and Conclusions of Law, 9/10/20, at 1–3. The suppression court concluded that Security Officer Cooper's actions fell under the "private search doctrine," and therefore denied suppression.

The case proceeded to a jury trial beginning on September 21, 2021. The jury found Pena guilty of both counts of persons not to possess firearms. On June 17, 2022, the trial court sentenced Pena to consecutive terms of 60 to 120 months of imprisonment. Pena filed post-sentence motions, which the trial court denied on October 21, 2022.

Pena did not appeal. On March 23, 2023, Pena moved *pro se* to appeal *nunc pro tunc*. The trial court treated the motion as a petition for collateral relief, which it granted after a hearing. Pena appealed *nunc pro tunc* on October 20, 2023. Pena and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Pena's sole issue on appeal is whether the suppression court erred by denying Pena's motion to suppress. Pena argues that the hospital security officer's search was state action and an unlawful search.

This Court applies the following standard of review:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

The Constitutions of the United States and Pennsylvania protect against unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. Art. I, § 8. Under the "private search doctrine," however, those provisions apply only to government action and "do not apply to searches and seizures conducted by private individuals." *Commonwealth v. Shaffer*, 209 A.3d 957, 971 (Pa. 2019) (analyzing the federal and state protections identically). Courts do not "treat[] a private search, which is not entitled to constitutional protection, as though it were conducted by a government agent." *Id.* Thus, suppression of evidence in a criminal trial is not "a remedy for private conduct." *Commonwealth v. Corley*, 491 A.2d 829, 834 (Pa. 1985).

We apply a two-part inquiry: "(1) whether the facts presented establish that a private search was conducted; and, if so, (2) whether the police actions exceeded the scope of the private search." *Id.* at 972 (following *United States v. Jacobsen*, 466 U.S. 109, 115 (1984)). A search is not private if it is "fairly attributable to the state." *Commonwealth v. Price*, 672 A.2d 280, 283 (Pa. 1996) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982)). We follow the Supreme Court on applying this test:

> Our cases reflect a two-part approach to the question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the state. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because his conduct is otherwise chargeable to the state.

> ***Lugar***, 457 U.S. at 937. The critical factor for purposes of determining whether state action is involved is whether the private individual, in light of all the circumstances, must be regarded as having acted as an "instrument" or agent of the state. ***Corley***, 507 Pa. at 832. [M]ere cooperation with the authorities alone does not constitute "state action." In other words, the mere fact that police and prosecutors use the results of an individual's actions does not, alone, elevate those actions to the level of state action. Where, however, the relationship between the person committing the wrongful acts and the State is such that those acts can be viewed as emanating from the authority of the State, the principles established in ***Corley*** dictate a finding of state action.

*Id.* at 283–84 (brackets, ellipses, and some citations deleted and altered).

For example, in ***Corley***, a store security guard detained and handcuffed a man who was running out of the store. ***Corley***, 491 A.2d at 830. The Supreme Court of Pennsylvania held that the "citizen's arrest" was not state action. *Id.* at 832–33. There was no basis to find that the security guard, a private party, was a state actor or acting as an instrument or agent of the state. *Id.* at 833. Therefore, a suppression motion would have failed. *Id.*

In another case involving the "private search doctrine," a computer repair shop technician reported to the police that he had observed images of child pornography while working on a computer. ***Shaffer***, 209 A.3d at 959–60. The technician's initial observation was a private search, and the subsequent police involvement (following "the exact route taken to find the images") did not expand upon the search. *Id.* at 973–74. Therefore, the supreme court affirmed the denial of suppression of the images. *Id.* at 976–77.

Here, we agree with the suppression court that Hospital Security Officer Cooper performed a private search of Pena's jacket and bag. As the court found, Cooper was following hospital policy in deciding to search based on his own observations of Pena. The police did not direct Cooper to search, and Cooper stepped away from the treatment area and other officers when he did so.

Notably, Pena's restraint and sedation at the time of the search do not transform the search into a state action. Hospital personnel, not police, decided to restrain and sedate Pena. Although Pena could not volunteer his consent to a search once he was unconscious, a lack of consent does not imply that a search is made at the behest of the police. Even if a private search is unreasonable, it does not violate the constitutional "guarantee against unreasonable searches *by the government*." **Shaffer**, 209 A.3d at 977. Furthermore, the police action here in securing the firearms did not exceed the scope of the private search.

Therefore, the suppression court properly denied Pena's motion to suppress evidence. We affirm Pena's judgment of sentence.

Affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: _7/24/2024_