J-S14025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL STONE | : | |
| | : | No. 2632 EDA 2016 |
| Appellant | : | |

Appeal from the Judgment of Sentence August 4, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010016-2015

BEFORE: OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JUNE 08, 2018**

Appellant Michael Stone appeals from the judgment of sentence imposed following his jury trial convictions for robbery and burglary.[1] Stone complains that the trial court erred in refusing to grant his peremptory strike against a potential juror, and in submitting the charge of burglary to the jury after the court allegedly failed to properly arraign him on that charge. We affirm.

Stone was arrested in August 2015, and charged by criminal complaint with robbery, burglary, and related offenses. **See** Complaint, 8/11/15, at 2. The factual description supporting the charges read:

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa. C.S.A. §§ 3701(a)(1)(iv) and 3502(a)(1), respectively.

> At 439 Domino Lane [Stone], with intent to commit a crime therein, unlawfully entered a building or occupied structure belonging to the complainant, John McFarland, by forcing open a door, and [Stone] forcibly took money from the complainant by struggling with the complainant and taking the complainant's wallet and phone, and [Stone] intimidated or attempted to intimidate the complainant to refrain from reporting the incident by telling the complainant that "it would be worse" if complainant[] called police.

*Id.* (unnecessary capitalization omitted).

The trial court held a preliminary hearing on October 6, 2015, and found that the Commonwealth had established a *prima facie* case on most of the charged offenses, including robbery and burglary. ***See*** Trial Disposition and Dismissal Form at 1. The Commonwealth thereafter filed a bill of information on October 14, 2015, charging Stone with robbery, burglary, and other offenses. ***See*** Information at 1. The burglary charge specified John McFarland as the victim, and 439 Domino Lane, Philadelphia, as the location. ***Id.***

Formal arraignment took place on October 27, 2015. Although the record does not reflect what occurred during those proceedings, Stone's counsel later stated that the burglary charge had been included in that arraignment. ***See*** N.T., 5/17/16 (Trial), at 112.

Jury selection for Stone's trial commenced on May 17, 2016. The court informed the prospective jurors that Stone was charged with burglary and robbery, and specifically that "the defendant entered the home of John McFarland located at 439 Domino Lane in the City of Philadelphia with the intent to commit a crime therein." N.T., 5/17/16 (Voir Dire), at 7.

The court and counsel began to question the prospective jurors individually. After questioning prospective juror number nine, a white woman, Stone used his fourth peremptory strike to remove her from the jury. The Commonwealth then stated, "Your Honor [], every white woman we've had so far has been struck. I don't know at what point this becomes a pattern, but I just want to bring that to the Court's attention." *Id.* at 30. The Commonwealth stated that Stone had thus far used four peremptory strikes, three of which had been used to remove each of the white female potential jury candidates that had been questioned. *Id.*[2]

Stone's counsel explained that he struck prospective juror number nine because she was the victim of a break-in and a theft, which were similar to Stone's charges. *Id.* at 30-31. The court questioned Stone's motives for the other two peremptory strikes which had been used to remove white women. Stone's counsel explained that he struck potential juror number one because she had a cousin who was a police officer, *id.* at 32, and he struck potential juror number seven because she was married, had a child, and both she and her husband had been working consistently for ten years, which "seems to be at least on a superficial level, a very stable home environment, a very stable work environment" and thus "she might not necessarily have an experience with certain situations" that the defense would ask her to accept as true. *Id.*

---

[2] Stone used his second peremptory strike against potential juror number five, who was a white man.

at 31-32. The court allowed the questioning to proceed, but cautioned that it was "aware of the pattern." *Id.* at 33.

Stone thereafter used his fifth peremptory strike against potential juror number 18, another white woman. *Id.* at 52; *see also id.* at 69 (trial court later noting that Stone used a peremptory strike on a white woman after the first discussion regarding the issue); Supplemental Trial Court Opinion, filed 5/31/17, at 8. The Commonwealth did not object to the strike, nor did the trial court question it.

Potential juror number 26 was a white woman. When Stone attempted to use his sixth peremptory strike to remove potential juror number 26, the court stated "You come up with a reason for this every time, but a trend is a trend, and it's a very strong trend. . . . So let's share the reason for this one and I may or may not make this selection anyway." *Id.* at 69. Stone's counsel responded that the reason for the strike was that Stone had lost concentration during the questioning. The court asked Stone's counsel to relay to Stone what the prospective juror had said during questioning; the proceedings paused while Stone and his counsel conferred. However, Stone's counsel then reasserted that Stone wished to strike the prospective juror, and offered no other explanation. The court denied the request and placed prospective juror number 26 on the jury as juror number eight. *Id.* at 70. The court noted Stone's objection to the placement.

After selection was completed and the jurors were seated, the court crier stated, "Michael Stone, to this docket number CP-51-CR-0010016-2016, sir

you're being charged with robbery. How do you plead to the charge on that one transcript, sir?" N.T. (Trial) at 5. Stone responded, "Not guilty." *Id.* The crier did not ask Stone to plead to a burglary charge.[3]

In its opening statement, the Commonwealth referred to the burglary charge against Stone several times. *See* N.T., 5/17/16 (Opening/Closing Argument) at 9, 11. Stone's counsel did not use the word "burglary" in his opening statement, but stated that Stone "didn't break into" the apartment, *id.* at 13, and acknowledged that "the allegations are that Mike Stone forced his way into an apartment" and put the complainant in a headlock. *Id.* at 16. Defense counsel also characterized the allegations as a "breaking and entering wrestling to the ground struggle for life robbery." *Id.* at 19. The Commonwealth then presented evidence that supported the burglary and robbery charges. *See* Trial Court Opinion, filed January 30, 2017, at 2-4. Stone's defense was, in short, that the complainant had fabricated the entire story.

After testimony had concluded, the court advised counsel that it had come to its attention that Stone had not been arraigned on the burglary charge at the beginning of trial, but that it intended to include the burglary charge on the verdict sheet. N.T. (Trial) at 111. Stone objected. Stone's counsel acknowledged that "the burglary charge was held for court after the

---

[3] Stone had also been charged with robbery under another docket number, CP-51-CR-0010017-2015, which was consolidated with the instant case for trial. The crier did ask Stone how he pleaded to the charge of robbery under that docket number, and Stone pleaded not guilty.

preliminary hearing"; the charge was included in Stone's formal arraignment and was listed on the bill of information; and Stone had addressed the burglary charge in his opening statement. *Id.* at 112. Stone's counsel also admitted that "[t]he defense has been on notice." *Id.* Nonetheless, Stone's counsel argued "after arraignment occurred in this trial today . . . jeopardy attaches to the trial, and therefore the district attorney waives by not making an objection or asking that those charges be included at the initial arraignment." *Id.* at 113.

The court noted that Stone "not only had notice, but has been acting accordingly. In fact, we were all under the impression that burglary was in place in this case." *Id.* at 115.[4] The court overruled the objection, stating that it would "not let an error in form affect this trial in that way since there's been no prejudice whatsoever, and the defendant's right[s] have not been infringed whatsoever." *Id.* at 117. Accordingly, the court instructed the jury on the elements of burglary, and the verdict sheet included the burglary charge.

The jury found Stone guilty of both robbery and burglary.[5] The court sentenced Stone on August 4, 2016, to consecutive terms of ten to 20 years' incarceration for burglary and one to five years' incarceration for robbery.

_____

[4] The court later repeated, "Now as I said, not only has there been notice, but both parties, everyone has been acting in conformity with burglary being at play." N.T. (Trial) at 117.

[5] Stone was found not guilty of robbery at CP-51-CR-0010017-2015.

Stone filed a timely notice of appeal,[6] and raises the following issues:

1. Did the trial court err by refusing [Stone]'s peremptory challenge to [potential] juror number 26 where the Commonwealth never made a formal **Batson**[7] objection; the trial court never ruled that there was a prima facie showing that [Stone's] challenge to the juror was based on race or gender; [Stone] provided race/gender-neutral explanations for his challenges; and the trial court never determined that there was purposeful discrimination, instead noting a "strong trend"?

_____

[6] Stone's appeal has experienced some delay. First, Stone's Rule 1925(b) Statement of Errors was filed after the deadline imposed by the trial court. The trial court accepted Stone's Statement as timely, because Stone's appellate counsel had not received a copy of the trial court's order requesting a 1925(b) statement, which had been served on Stone's trial counsel. In his Statement, Stone asserted that he had not yet received the transcripts necessary for appeal. The trial court therefore entered an order allowing Stone to submit a supplemental Statement within 21 days of receipt of the transcripts. After the transcripts of trial and sentencing became available on the court's system, the trial court entered a Rule 1925(a) Opinion, and the certified record was transmitted to this Court. In its Opinion, the court concluded that Stone had waived one of his issues—related to jury selection—because he had failed to request that those transcripts be made part of the record, despite the warning on the court's standard transcript-request form that _voir dire_ transcripts are not provided with trial transcripts unless specifically requested.

Stone petitioned this Court to remand, as the transcripts of trial and sentencing had not been transmitted to this Court with the rest of the certified record, and because the transcripts of jury selection had not yet been made part of the record. We remanded the record with the direction that the trial court add all relevant transcripts, including the transcripts of jury selection; ordered Stone to submit a supplemental Rule 1925(b) Statement of Errors; and ordered the trial court to submit a supplemental Rule 1925(a) opinion. After the jury selection transcripts were posted to the trial court's system, Stone filed a supplemental Rule 1925(b) Statement of Errors. The trial court thereafter filed a Supplemental Rule 1925(a) Opinion, and a supplemental certified record was transmitted to this Court.

[7] **Batson v. Kentucky**, 476 U.S. 79 (1986).

2. Should not [Stone]'s conviction for burglary be vacated where the trial court erroneously instructed and submitted a verdict slip to the jury on the charge of burglary when [Stone] was not arraigned on, and therefore did not make any plea to, the burglary charge prior to commencement of trial, thereby denying [Stone] due process of law in violation of his constitutional rights?

Stone's Br. at 3 (answers below omitted).

## I. *Batson* Claim

Stone argues that the trial court erred in refusing to grant his peremptory strike against the 26th potential juror. Stone first claims that the trial court's action was improper because the Commonwealth never made a formal **Batson** objection, but "merely noted" that Stone "was striking every white woman on the panel." Stone's Br. at 16. Next, Stone complains that "the trial court never ruled that the Commonwealth had made a *prima facie* showing that the circumstances gave rise to an inference that [Stone] struck jurors on account of race or gender." **Id.** at 17. Third, Stone asserts that he offered race- and gender-neutral explanations for each of his strikes and "the trial court never made a determination that the Commonwealth proved purposeful discrimination." **Id.** Stone also argues that his race- and gender-neutral explanations for striking jurors were not a pretext, but rather part of the jury-selection strategy counsel consistently employed for all potential jurors. **Id.** at 22.

In **Batson**, the United States Supreme Court established a three-part test to evaluate claims that a party engaged in discrimination during jury selection. **Commonwealth v. Johnson**, 139 A.3d 1257, 1282 (Pa. 2016). First, the objecting party must make a *prima facie* demonstration that the

other party exercised a peremptory challenge on the basis of race or gender. *Id.*; *see also Commonwealth v. Rico*, 711 A.2d 990, 992 (Pa. 1998). Second, the burden shifts to the striking party to articulate a neutral reason for striking the prospective juror. *Johnson*, 139 A.3d at 1282. Third, "the trial court must determine whether the [objecting party] has carried his burden of proving purposeful discrimination." *Id.*

In determining whether peremptory challenges were used to exclude potential jurors on the basis of race or gender, "the trial court must consider the totality of the circumstances." *Commonwealth v. Simmons*, 662 A.2d 621, 631 (Pa. 1995). "The decisive question" in the inquiry is "whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Commonwealth v. Harris*, 817 A.2d 1033, 1043 (Pa. 2002) (citing *Hernandez v. New York*, 500 U.S. 352, 365 (1991)). The trial court's answer to this question "must be accorded great deference on appeal," as it depends upon an assessment of credibility. *Id.* We may therefore only overturn the trial court's determination if "clearly erroneous." *Id.*

In its Supplementary Rule 1925(a) Opinion, the court explained that all three prongs of the *Batson* inquiry were met. First, "the use of five of the first six defense peremptory challenges against white women established a *prima facie* showing that the defense had exercised peremptory challenges on the basis of race." Suppl. Trial Ct. Op. at 9 (italicization added). Second, "though

not credible,[8] the explanations offered by the defense for the first three peremptory challenges . . . were theoretically race-neutral," but "in the case of the peremptory challenges to Jurors [18] and [26], no reasons at all were offered." *Id.* And third, "the record supported a determination that the pattern of defense peremptory challenges of five white women constituted purposeful discrimination, where the reasons, when any were offered at all, were neither credible nor consistent." *Id.* The court denied Stone's peremptory strike of prospective juror number 26 "[i]n light of the clear pattern of race-based peremptory challenges and in the absence of any offered reason for the strike." *Id.*

We see no reason to disturb the trial court's handling of this issue. The Commonwealth established a *prima facie* case for a **Batson** violation when, after Stone struck potential juror number nine, it raised with the trial court that Stone had struck each white, female potential juror that the court had questioned, and had used three of his four peremptory strikes to do so. The trial court noted the "strong trend," and prompted Stone to provide race- and gender-neutral explanations, which the court at first accepted. When Stone attempted to strike a fifth white woman, potential juror number 26, his counsel stated it was because Stone could not remember her answers to the

_____

8 The trial court noted in a footnote that Stone had struck potential juror number one, a white woman, because her cousin was a police officer, but Stone did not strike potential juror number six, a black man, even though his father had been a police officer. **See** Suppl. Trial Ct. Op. at 8 (citing N.T. (Voir Dire) at 25-27).

court's questions. However, the questioning of the potential juror was not lengthy; the court gave Stone's counsel time to repeat the potential juror's answers to Stone; and Stone's counsel did not ask the court for permission to recall the potential juror for follow-up questions. The court determined that the reason offered by Stone for striking the potential juror was pretextual, and that discriminatory intent existed.

Under the facts and circumstances of this case, the trial court's ruling on the **Batson** issue was not clearly erroneous. Stone is due no relief on his first issue.

## II. Burglary Charge

In his second issue, Stone argues that the trial court erred in submitting the burglary charge to the jury, because the court did not "arraign" Stone on that charge at the commencement of trial. Stone compares his case to **Commonwealth v. Hartman**, 638 A.2d 968 (Pa. 1994), and claims that the Commonwealth "constructively amended the Bills of Information," when it did not object to the court's arraignment. Stone's Br. at 27-28. Stone further asserts that he was deprived of due process because he never entered a plea to the burglary charge, including at his formal arraignment, which took place on October 27, 2015. **Id.** at 29.

Arraignment is governed by Rule 571 of the Pennsylvania Rules of Criminal Procedure.[9] Pa.R.Crim.P. 571; **see also** 42 Pa. C.S.A. § 8703 ("Except for the provisions of this section, arraignments shall be in the form and in the manner as provided by court rule"). The rule provides that the court shall advise the defendant of (1) the right to be represented by counsel, (2) the nature of the charges, (3) the right to file motions, and (4) that a failure to appear at any proceeding may be deemed a waiver of the defendant's right to be present. **See** Pa.R.Crim.P. 571(C).

Notably, the rule does not facially require that a defendant be given the opportunity to plead to the charges during formal arraignment. This is consistent with the official comment, which explains that "[t]he main purposes of arraignment" are "to ensure that the defendant is advised of the charges; to have counsel enter an appearance, or if the defendant has no counsel, to consider the defendant's right to counsel; and to commence the period of time within which to initiate pretrial discovery and to file other motions." **Id.**, Official Comment. This varies slightly from our jurisprudence, which has maintained that a core function of arraignment is to afford the defendant an opportunity to enter a plea. **See Commonwealth v. Phelan**, 234 A.2d 540,

---

[9] Arraignment is distinct from preliminary arraignment, which is not at issue in this case. **See** Pa.R.Crim.P. 540, cmt. ("A preliminary arraignment as provided in this rule bears no relationship to arraignment in criminal courts of record"). The arraignment process is also governed by local rule. **See** Pa.R.Crim.P. 571(A). The local rule of the Philadelphia Court of Common Pleas does not materially vary from the statewide rule. **See** Phila.Crim.R. 571.

545 (Pa. 1967) (stating "the purpose and necessity of an arraignment is to fix the identity of the accused, to inform him of the nature of the charges against him and to give him the opportunity of informing the court of his plea thereto," citing 21 Am.Jur.2d, Criminal Law § 452 (1965)), *overruled on other grounds by* **Commonwealth v. Walzack**, 360 A.2d 914 (Pa. 1976).[10]

Regardless of whether a plea is required under the rule, a technical violation of a rule of criminal procedure does not result in dismissal in the absence of prejudice. **See Commonwealth v. Bowman**, 840 A.2d 311, 317 (Pa.Super. 2003). This precept applies to the rule governing arraignment, as "[d]ue process of law does not require that any technical form of procedure be followed." **Phelan**, 234 A.2d at 545. The relevant inquiry is whether the purposes of arraignment have been fulfilled, and whether the defendant suffered prejudice. **See Jones**, 308 A.2d at 602-03 (finding no due process violation where defendant pleaded not guilty while unrepresented during arraignment, because (1) the purposes of arraignment were fulfilled and (2) defendant's lack of representation caused him no prejudice because defendant would have entered same plea if counsel had been present).[11] Accordingly, for example, no relief is due where the full contents of the charging document are

---

[10] **Accord Commonwealth v. Jones**, 308 A.2d 598, 602-03 (Pa. 1973); **Commonwealth v. Jennings**, 285 A.2d 143, 148 (Pa. 1971); **Commonwealth v. Blackwell**, 458 A.2d 541, 543-44 (Pa.Super. 1983).

[11] **See also Commonwealth v. Paskings**, 290 A.2d 82, 84 (Pa. 1972); **Blackwell**, 458 A.2d at 543-44; **Commonwealth v. Andrews**, 426 A.2d 1160, 1162 (Pa.Super. 1981).

not read aloud during arraignment, but the defendant is fully aware of the charges against him or her, and no prejudice occurred. ***See, e.g., Phelan***, 234 A.2d at 545 ("[E]ven in the absence of a reading of the contents of the indictments, all of the basic requirements of an arraignment were fully complied with in this case"); ***Jennings***, 285 A.2d at 148.

Here, Stone contends that the trial court erred when it failed to read the burglary charge or ask him to enter a plea to burglary at the commencement of trial. However, Stone failed to argue to the trial court that he was prejudiced by the court's error. ***See*** N.T. (Trial) 111-117. He therefore has waived this issue. ***See*** Pa.R.A.P. 302(a) (issues cannot be raised for the first time on appeal).

Even if Stone had properly preserved the objection, his claims of prejudice—raised for the first time on appeal—are without merit. Stone does not allege that he was unaware that he faced a burglary charge, and indeed, he acknowledged to the trial court that he was on notice of this charge at every stage of the proceedings. Nor does he claim any prejudice specifically resulting from the court's failure to ask for his plea to the burglary charge. He does not assert, for example, that he would have pled guilty and thereby received a reduced sentence, or that the jury was unaware that he was contesting the charges and professing his innocence, but for the error.

Instead, Stone offers two reasons that he suffered prejudice. First, he claims that defense counsel "referenced a break-in" during his opening remarks, and did not object to the Commonwealth's reference to burglary,

"because he knew, based on the open-court plea of not guilty to robbery only, that burglary was not a charge that he had to defend against." Stone's Br. at 28. However, Stone offers no substantive explanation of how his trial evidence or strategy would have changed, had the court read the burglary charge. The record reflects that Stone's defense against both the burglary and robbery charges—namely, that McFarland had fabricated the events—was the same, and unaltered by the court's failure to recite the burglary charge.[12]

Second, Stone offers that he was "clearly prejudiced by the trial court's error as he was subsequently convicted of the burglary charge[.]" **Id.** However, this argument misses the mark, as the court's error in arraignment did not result in Stone's conviction. Stone fails to establish any prejudice from any technical failure in his arraignment.

Finally, Stone argues that the Commonwealth's failure to object to the court's error could be construed as a "constructive amendment" to the information. Stone's only support is **Hartman**, in which the defendant argued that the Commonwealth had "constructively amended" the charging document when it verbally assured the defendant that it would not proceed on a certain charge at trial. **Hartman**, 638 A.2d at 969. However, in deciding the case, the Supreme Court did not reach the question of "constructive amendment."

_____

[12] Indeed, it is unclear whether Stone was even aware of the failure, before it was brought to the court's attention by unknown means.

- 15 -

*See Hartman*, 638 A.2d at 970.[13] Regardless, an amendment to an information only warrants relief when the amendment prejudices the defendant. *See Commonwealth v. Roser*, 914 A.2d 447, 454 (Pa.Super. 2006). As Stone failed to establish prejudice before the trial court, we affirm his judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/18

---

[13] In *Hartman*, the prosecution charged the defendant with forcible rape, but verbally assured the defendant that it would not pursue a theory of guilt based on the victim's mental capacity to consent. *Hartman*, 638 A.2d at 969-70. However, at the conclusion of trial, the court *sua sponte* charged the jury regarding capacity to consent. *Id.* Our Supreme Court granted relief on the basis that the court had deprived the defendant of the "basic elements of procedural due process": "adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Id.* at 970-71 (quoting *Commonwealth v. Thompson*, 281 A.2d 856, 858 (Pa. 1971)). Here, unlike in *Hartman*, neither the prosecution nor the court assured Stone that the burglary charge would not be pursued at trial or prevented him from introducing evidence to defend against the charges. And, unlike the defendant in *Hartman*, Stone has not established that he was deprived of adequate notice of the burglary charge, or an opportunity to defend himself against it.